7919

## HOLLIDAY v. PEGRAM.

1. CONTRACT—LETTERS.—It was error to hold that the letters in this case made up a complete rent contract.

   MR. JUSTICE WOODS *dissents.*

2. RENT—REPAIRS.—Where the rent contract is silent as to repairs evidence is admissible to show the landlord as part of the consideration of the contract agreed to make repairs.

3. CONTRACTS.—In construing contracts all the writings of the parties' leading up to them are admissible.

4. VERDICT.—There being evidence here tending to show one member of a firm contracted to rent a warehouse in his individual capacity, it was error to direct a verdict on the contract against the partnership.

Before SEASE, J., Florence, September, 1910.   Reversed.

Action by J. W. Holliday against G. H. Pegram & Company.   Defendants appeal.

*Messrs. J. W. Ragsdale* and *R. E. Whiting,* for appellants, cite: *Do the letters make out a completed contract?* 1 Page on Con., sec. 26; 118 Am. St. R. 806; 142 Mass. 442; 1 Par. on Con. 476-7; 9 Cyc. 267; 14 Allen 242; 6 H. L. Cas. 238; 80 Fed. 337; 5 Ch. Div. 648; 41 Am. St. R. 545; 10 Nev. 135; 10 Mo. App. 106; 46 Vt. 478; 19 Johns 212; 20 Wall. 546; 47 Hun. 494; 22 Fed. 596; 5 Rich. Eq. 91; 87 Hun. 477; 48 N. W. 963; 35 N. J. Eq. 266; 9 Cyc. 280; 29 L. R. A. 431.   *Extrinsic evidence is admissible to show whether the letters were intended to make a contract:* 19 C. C. A. 611; 2 Par. on Con. 667; 17 Cyc. 692; 5 Wall. 689; 21 Ency. 1097, 1115; 107 U. S. 437; Thayer Prel. Treat. on Ev. 445; 9 Cyc. 588; 9 Wall. 50; Page on Contracts 1745.   *Whether the letters made a complete contract was for jury:* 67 S. C. 34; 101 U. S. 263; 23 Ency. 555; Abb. on Jury Trials 459; 11 Wheat. 59; 10 L. R. A. 689; 79 N. Y. 108.

*Messrs. Willcox & Willcox* and *Henry E. Davis,* contra: *Test as to whether contract is made by letters:* 1 Hill Ch. 159. *Landlord is not bound to make repairs in absence of contract:* 32 S. C. 589.

## STATEMENT OF FACTS.

This is an action, to recover the sum of eight hundred and fifty dollars, for the rent of a tobacco warehouse.

The complaint alleges, that, at the times herein mentioned, the defendants, G. H. Pegram and C. W. Payne, were copartners under the firm name of Pegram & Company; that about the 23d of March, 1910, the plaintiff entered into an agreement with the defendants, by the terms of which, they were to occupy certain property, known as the Dixie Warehouse, for the season of 1910, and to pay, as rent, the sum of eight hundred and fifty dollars, on the first of September, 1910; that pursuant to said agreement, the defendants entered into possession of the premises, and were in possession of the same, at the time this action was commenced.

The defendants, in their answer to the complaint, admitted the allegations of partnership between the defendants, but denied all the other allegations.

The following letters were introduced in evidence, without objection:

*Exhibit "A."*        "Kinston, N. C., February 3, 1910. "Mr. Jos. W. Holliday, Savage, S. C.

Dear Sir: I have discussed your proposition with Mr. Payne, and he prefers, as I do, to rent the W. H. for the coming season, with option to buy, October 1, 1910. We will give you $850 rent, if we don't buy, but if we buy the W. H., will pay $1,000 October 1, 1910, and eight per cent. interest on $6,000 from date of contract and $1,000, with interest at 8 per cent. each October 1st thereafter, until the $6,000 is paid. Please write me as soon as con-

venient, on account of the other proposition, I have under consideration. Yours truly, G. H. Pegram."

*Exhibit "B."*          "Savage, S. C., March 10, 1910.
"Mr. G. H. Pegram, Kinston, N. C.

Dear Sir: Referring further to renting you my warehouse in Florence, S. C., for the coming tobacco season, will say, that if you still care for it, I will rent it to you for eight hundred and fifty dollars, payable on the first day of September, 1910, provided you accept same promptly. You being the first to see about it, and others are after me for it. If you want it, we can arrange the rent agreement, when you come down to look after the work. I am, yours truly, (Signed) Jos. W. Holliday."

*Exhibit "C."*          "Kinston, N. C., March 20, 1910.
"Mr. Jos. W. Holliday, Savage, S. C.

Dear Sir: We will take your warehouse at Florence, S. C., $850.00 rent, for the coming season 1910. You can send me copy contract, will arrange rent agreement, when come down. Yours truly, (Signed) G. H. Pegram."

*Exhibit "D."*          "Savage, S. C., 3-23-1910.
"Mr. G. H. Pegram, Kinston, N. C.

Dear Sir: I beg to acknowledge yours of March the 20th, 1910, in answer to mine to you, of the 10th of March, and as per same, consider it a bargain or trade of rent, for my warehouse in Florence, S. C., for the coming season. We can arrange the agreement when you come down to begin work, out in the country. Yours truly, (Signed) Jos. W. Holliday."

*Exhibit "E."*          "Florence, S. C., June 7th, 1910.
"Mr. J. W. Holliday, Savage, S. C.

Dear Sir: If you can make it convenient, to come over to Florence this week, I am ready to make contract for your warehouse. If you can't come this week, please state time when you can come, so I won't be out of the city. Yours truly, (Signed) G. H. Pegram."

*Exhibit "F."*          "Savage, S. C., 6-9-10.

"Mr. G. H. Pegram, Florence, S. C.

Dear Sir: I am just in receipt of yours of the 7th. It will be so that I can't get up to Florence, this week. If you are going to do any work, out through the country, in working this section, call by and we can fix up our contract. If you are not coming down this way, I will try and go to Florence, one day before long. Trusting, though, that you will come down, through this section, I am, yours truly, (Signed) Jos. W. Holliday."

The following letters and proposed contract, were offered by the defendants, but his Honor, the presiding Judge, refused to allow them, to be introduced in evidence:

"Florence, S. C., July 20, 1910.

"Mr. J. W. Holliday, Savage, S. C.

Dear Sir: Mr. G. H. Pegram is not quite satisfied with the contract, for lease of the Dixie Warehouse, which you sent him. He would like to have the following changes made in the contract:

"1st. The lease should be for the term of one year from the 20th day of March, 1910, to the 20th day of March, 1911.

"2d. An agreement on your part, to keep the roof in good repair, so far as is practicable, will be satisfactory to Mr. Pegram; or an agreement giving him the authority, to put the roof in good repair, and to make such repairs, as he may think necessary, at your expense, will be equally satisfactory.

"3d. In making an agreement for an option to renew the lease, the contract should state, that in case of renewal, the new contract should be upon the same terms and conditions, which govern this contract.

"Please advise us at your earliest convenience, in regard to this matter, and if our suggestions are acceptable to you, we will draw a contract accordingly, and will have it signed

by Mr. Pegram, and forwarded to you for your signature. Yours very truly, (Signed) R. E. Whiting."

"Savage, S. C., 7-21-10.

"Messrs. G. H. Pegram & Co., Florence, S. C.

Gentlemen: I am in receipt of yours of the 18th, and am very much surprised and very sorry, to hear the roof is as you write. I did not make any bargain or offer with Mr. Lundy to do the work. He mentioned it to me, in the warehouse, and I asked him to look at, and examine it, and see what he would do it for, and write me, as I stated in Mr. Ragsdale's office, where, in talking over it, I left it to you, to have done, and I was to pay you for it. As yet, I have no help, and it is very bad for me, to get away from here, and as per our understanding, it seems you could have the leaks stopped, just as well as I could. And if the shingles are as you state, there is a roof paint that will stop leaks; even if it is put on a wire gauze it won't leak; so, see if it is kept by any of the stores there, and use that on the leak to stop them, in place of taking off the shingles. I will pay for it and the putting on. Trusting the paint will stop the leaks, and you can get it and will have it attended to at once, and from time to time as needs be. I would suggest that you mark the leaks, and then get some one that understands putting on paint (a regular painter), to do it. Look into this, and let me hear from you about it. Hoping it will do all right, I am, yours truly, (Signed) Joseph W. Holliday."

"Savage, S. C., 8-29-10.

"Messrs. G. H. Pegram & Co., Florence, S. C.

Gentlemen: Your rent to me of eight hundred and fifty dollars, for the warehouse will be due on the first day of September, 1910; please send me your check for same on that date, less what you have paid out, on repairing building, and for the amounts; send me receipted, itemized bills from the parties, who did the work for you, and from

whom you got the material.    Trusting you will be prompt in this, I am, yours truly, (Signed) Jos. W. Holliday."

"Savage, S. C., July 14, 1910.

"Mr. J. W. Ragsdale, Florence, S. C.

Dear Sir: As per mutual understanding between Mr. Pegram, Mr. Whiting and myself, I enclose an agreement for rent of warehouse property, for 1910, which covers all points, as per our discussion in your office.    I have signed same, in the presence of a witness, and you can have Mr. Pegram to sign them, keeping one and returning one to me. I am, yours truly, (Signed) Jos. W. Holliday."

"State of South Carolina, County of Florence.

"This agreement, made about the 20th day of March, 1910, between Jos. W. Holliday, lessor, and G. H. Pegram and C. W. Payne, constituting the firm of G. H. Pegram & Co., lessees.

"The said Jos. W. Holliday, does hereby rent to the said G. H. Pegram & Co., his lot from the first day of January, 1910, to the 31st day of December, 1910, for eight hundred and fifty dollars, payable on the first day of September, 1910, * * *

"The said G. H. Pegram & Co. have rented from the said J. W. Holliday, his lot known as the Dixie Tobacco Warehouse lot, for which the said G. H. Pegram & Co. are to pay to the said Jos. W. Holliday, eight hundred and fifty dollars, on the first day of September, 1910. * * *

"And it is understood by and between the said parties, that, as there are some leaks in the roof of the warehouse, which the said G. H. Pegram & Co. agree to have patched, from time to time, by putting on a good shingle or shingles, in the place of defective one or ones, or shingles that may be off of said roof, to stop said leaks, which they are to keep an itemized account of the cost of said work, rendering same to the said Holliday, which he is to pay them for.

"And the said Jos. W. Holliday further agrees, that if he does not dispose of the said property, by the first day

of February, 1911, he will give the said G. H. Pegram &
Co. the preference of renting said property again, for 1911,
provided they want it, and will notify me, so I will get said
notice by the 10th day of February, 1911, and we enter, at
once, into an agreement which is mutually satisfactory to
both parties.

"Witness our hands and seals, this the 14th day of July,
1910.

"Signed, sealed and delivered in the presence of R. S.
Altman.

"(Witness as to J. W. Holliday's signature.)   (Signed)
J. W. Holiday. (L. S.)"

At the close of the testimony his Honor, the Circuit
Judge, directed a verdict in favor of the plaintiff, for eight
hundred and fifty dollars, with interest from the first of
September, 1910, and the defendant appealed.

### OPINION.

May 23, 1911.   The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY (after stating the facts).   The
plaintiff contends, that the letters "B," "C" and "D,"
show a complete contract between him and the defend-
ants, and that the verdict was properly directed.   On the
other hand, the defendants contend, that the letters merely
show negotiations for an agreement, which was not to be
binding upon the parties, until it was formerly executed;
also, that G. H. Pegram, alone, rented the house in his
individual capacity.

The first question that will be considered, is, whether
the letters which were introduced without objection, make
out a complete contract.   The letters "B," "C" and
"D" must be considered in connection with the let-
ters "A," "E" and "F," as they were introduced
without objection.

"A valid.contract may doubtless be made by correspond-
ence, but care should always be taken, not to construe as an
agreement, letters which the parties intended only, as a
preliminary negotiation.  The question in such cases always
is, did they mean to contract by their correspondence, or
were they only settling the terms of an .agreement, into
which they proposed to enter, after all its particulars were
adjusted, which was then to be formally drawn up and by
which alone they designed to be bound."  *Lyman* v. *Rob-
inson,* 14 Allen 242.

"Courts, in the construction of contracts, look to the
language employed, the subject matter and the surround-
ing circumstances.  They are never shut out from the same
light, which the parties enjoyed, when the contract was
executed, and, in that view, they are entitled to place them-
selves, in the same situation, as the parties who made the
contract, so as to view the circumstances, as they viewed
them, and so to judge of the meaning of the words, and of
the correct application of the language, to the things
described."  *Nash* v. *Towne,* 5 Wall., 689.

"Where there is a doubt as to the proper meaning of the
contract, the Court may receive evidence of the practical
construction, which the parties themselves have placed on
it, as indicated by their acts under it, for it is a canon in
the interpretation of contracts, that the practice of the
parties under them, may furnish a solid basis, on which their
construction may rest, inasmuch as the subsequent acts of
the parties, in executing a contract, may reflect their inten-
tion in making it."  21 A. & E. Enc. of Law, 1115.

"It is unquestionably the duty of the Court, in constru-
ing a written instrument, to interpret its language, and it
may also state the effect thereof, where it is susceptible of,
but one inference; but where the inference to be drawn,
from the facts stated in the instrument, is in dispute, and
such facts susceptible of more than one inference, then the
question must be determined by the jury, especially when

the inference to be drawn, is dependent upon other facts in the case." *Clover* v. *Gasque,* 67 S. C. 34, 45 S. E. 113.

"Doubtless the general rule is, that it is the province of the Court, to construe written instruments; but, it is equally well settled, that where the effect of the instrument depends, not merely on its construction and meaning, but upon collateral facts and extrinsic circumstances, the inference of fact to be drawn from the paper, must be left to the jury." *West* v. *Smith,* 101 U. S. 263.

"Where the parties to a contract have given it a particular construction, such construction will generally be adopted by the Court, in giving effect to its provisions. And the subsequent acts of the parties, showing the construction they have put upon the agreement themselves, are to be looked to, by the Court, and in some cases may be controlling." 9 Cyc. 588-9.

"The construction of a contract, is a question for the Court, if the terms of the contract, and the extrinsic facts, which may affect construction, are free from dispute. This rule applies where the contract consists of several writings, as where it consists of letters exchanged between the parties. * * * If the terms of the contract are in dispute, or it is possible, to draw more than one inference from the established facts, which are relied on, to show the intention of the parties, the jury must determine such facts, or decide which of such inferences, is the correct one. The Court should, in such cases, submit the question, of fact to the jury, under proper alternative instructions, as to the construction to be given, in the event of each possible finding of fact, by the jury." 2 Page on Contracts, sec. 1129.

"It is a well settled principle, that when the construction to be given a contract, is rendered doubtful, by the language thereof, the interpretation of the contract, by the parties themselves, is entitled to great weight." *Williamson* v. *Association,* 54 S. C. 582, 32 S. E. 765.

In letter "B" the plaintiff says: "If you want it, we can arrange the rent agreement, when you come down, to look after the work." In letter "C" the defendant, G. H. Pegram, says: "You can send me copy contract, will arrange rent agreement, when come down." In letter "D" the plaintiff says: "We can arrange the agreement, when you come down, to begin work, in the country." In letter "E" the defendant says: "I am ready to *make* contract for your warehouse," and in letter "F" the plaintiff says: "Call by and we can fix up our contract." It will also be observed, that the other letters do not mention, all the provisions of the contemplated agreement, set out in letter "A."

The foregoing authorities show, the Court erred in ruling that the said letters, made a complete contract.

But even if the said letters showed, that the contract was complete without further action, on the part of the plaintiff, and the defendants, it would not follow that the presiding Judge was right, in directing a verdict. When the defendants offered testimony tending to show, that there was an agreement as to repairs, the plaintiff's attorneys objected to the introduction of such testimony, whereupon the defendants' attorney thus stated the object of the testimony: "I want to show, that, according to the terms of the agreement, entered into between Mr. Holliday and Mr. Pegram, and the subsequent agreement between Mr. Holliday and Mr. Pegram of Pegram & Co., that Mr. Holliday agreed to have this work done."

The following then took place:

"The Court: You do not plead it in your answer.

"Mr. Ragsdale: How could I set up a counterclaim under the law of this case?

"Mr. Willcox: He could sue us in an independent action.

"Objection sustained."

If there is a lease in writing, which makes no reference to repairs, the lessee is not precluded from introducing

[Rep.] April Term, 1911.

parol testimony to show, that, as a part of the considera-
tion of the agreement to pay rent, the lessor promised to
make repairs. And, if it appears that the lessee suffered
damage, by reason of the lessor's failure, to make the
repairs, he would not be allowed to recover the whole
amount mentioned as rent, but only that amount, after
deducting such damages, as the lessee may have sustained,
by reason of the lessor's failure to make the repairs. *Wil-
liams* v. *Salmond,* 79 S. C. 459, 61 S. E. 79.

The foregoing authorities also show, that the presiding
Judge erred in his ruling that the letters and pro-
posed contract, which he refused to allow the defend-
ants to introduce, were not admissible in evidence.

The next question that will be considered, is, whether
there was error in directing a verdict, on the ground
that there was testimony tending to show, that G.
H. Pegram alone, rented the warehouse in his indi-
vidual capacity.

His Honor allowed defendants to introduce testimony
to that effect. He did not change his ruling, or strike out
such testimony. Therefore, in determining whether there
was error in directing a verdict, the testimony which he
ruled to be competent, must be taken into consideration.
As the defendants denied the allegation, that the defend-
ants, as partners, entered into the contract, and there was
testimony tending to show, that G. H. Pegram alone entered
into the contract, in his individual right, the presiding Judge
erred, in withdrawing such fact, from the consideration of
the jury, by directing a verdict.

It is the judgment of this Court, that the judgment of
the Circuit Court be reversed, and that the case be remanded
to that Court, for a new trial.

MR. JUSTICE WOODS *concurring in the result.*

I concur in the conclusion that there should be a new
trial in this case, on the ground that the defendants should

have credit for the repairs made on the warehouse.    But I am unable to assent to the views expressed by Mr. Justice Gary on the other points.    The letter of the plaintiff of March 23, 1910, to G. H. Pegram, in answer to a letter agreeing to pay $850 rent, stated that the plaintiff considered the warehouse rented for the coming tobacco season. Not only was there no dissent or objection on the part of the defendants to the statement of this letter, but both the defendants in the face of it entered into possession of the warehouse and used it for the tobacco season.    The correspondence shows that, besides the allowance for repairs, the only other claim made by the defendants was that they should have a right to a renewal of the rent contract.    The right of renewal if established could not affect the right of the plaintiff to recover the rent when it fell due.