## 10582

### JUMPER v. QUEEN MAB LUMBER CO.

#### (106 S. E. 473)

1. REFORMATION OF INSTRUMENTS—FRAUD OR CONCEALMENT UN-NECESSARY IF MISTAKE IS MUTUAL.—Equity can reform a contract for mutual mistake of the parties in reference to the facts upon which it is based or in the omission or insertion of some material stipulation in the written contract, even when there is no element of misrepresentation or concealment, though, if the mistake was unilateral, it must have been induced by misrepresentation, concealment, or imposition.

2. APPEAL AND ERROR—FINDINGS IN EQUITY SUSTAINED UNLESS APPEL-LANT SHOWS THEM CONTRARY TO EVIDENCE.—The finding of fact by the Circuit Judge on an equitable issue will be sustained, unless the appellant shows that they are against the preponderance of the evidence; the burden of such showing being on him.

3. REFORMATION OF INSTRUMENTS—EVIDENCE HELD TO SHOW MUTUAL MISTAKE AS TO TERMS OF CONTRACT SIGNED.—Evidence that the vendor owned only the timber rights in a certain tract, which the purchaser knew, held to sustain the trial Judge's findings of mutual mistake in a contract for the conveyance of the title to the tract, which was prepared with another contract for sale of a tract the title to which the vendor owned.

4. LOGS AND LOGGING—REFORMATION OF INSTRUMENTS—MUTUAL MIS-TAKE WITHOUT FRAUD NOT GROUND FOR RECISSION.—A mutual mistake whereby the written contract provided for the conveyance of the title to a tract of land, instead of the conveyance of merely the timber rights therein as agreed upon by the parties, does not entitle the vendor to rescind the contract, though it does entitle him to have it reformed to conform to the oral agreement.

5. REFORMATION OF INSTRUMENTS—CORRECTION OF WRITTEN AGREEMENT TO CORRESPOND WITH UNDERSTANDING NOT RELIEF AGAINST MUTUAL MISTAKE.—The relief granted by equity in reforming a written contract to conform to the actual agreement of the parties is not, strictly speaking, relief on the ground of mutual mistake, but is a distinct branch of equity jurisprudence.

6. REFORMATION OF INSTRUMENTS—NEGOTIATION DOES NOT DEFEAT RIGHT TO HAVE WRITTEN AGREEMENT CONFORM TO UNDERSTANDING. The right of a party to a written contract to have it reformed so as to conform to the real agreement of the parties is not defeated by his negligence, in failing to discover the discord between the written contract and the agreement, since the other party was equally negligent, or, if he discovered the discord and kept silent to reap the benefit thereof, is without standing in equity.

7.  APPEAL AND ERROR—CONSENT ORDER AS TO FUND HELD TO ENTITLE
    DEFENDANT TO AFFIRMANCE OF DEGREE RESCINDING INSTEAD OF
    REFORMING CONTRACT.—In an action for breach of a contract for
    the sale of land where the defendant established his right to reform
    the contract to provide only for sale of the timber, but the Court
    erroneously decreed a rescision of the contract, and it appeared that
    the timber rights had been sold under a consent order and the pro-
    ceeds deposited to await the outcome of the suit, so that defendant
    was entitled to the fund which represented the subject-matter of
    the controversy, whether the contract was reformed and specifically
    enforced or was rescinded, the decree awarding the fund to him will
    be affirmed, regardless of error as to rescission.

Before MAULDIN, J., Georgetown, November term, 1919. Affirmed.

Action by W. J. Jumper against Queen Mab Lumber Co. From judgment for defendant the plaintiff appeals.

The decree of the Circuit Judge was as follows:

This case was instituted in the Court of Common Pleas for Aiken county, but, on motion, Hon. H. F. Rice, by order dated August 19, 1919, changed the venue to Georgetown County, and the entire record therein was transferred to that county.

The complaint alleged that the defendant, on October 17, 1917, agreed to sell in fee, for $5,000, to the plaintiff, a tract of land in Aiken county, containing 498.8 acres; that the contract was broken by the defendant; and that the plaintiff was entitled to the sum of $4,960, the difference in the alleged value of the land and the contract price. The defendant answered, admitting the formal execution of the alleged contract, but alleging that the same was executed in error and mistake, both parties intending to contract only as to certain timber and timber rights on said land, this being the true agreement, and both parties well knowing that the defendant did not own the fee; that if the contract be re-formed so as to express the true intention of the parties, and so as to cover the timber and the timber rights owned by the

defendant on the said tract of land, that it was ready and willing to carry out the same on its part. There were other defenses, but the conclusion I have reached renders a consideration of them unnecessary.

A consent order was passed by me at the November, 1919, term of Court for Georgetown County, whereby a jury trial was waived, the cause transferred to Calendar No. 2, and referred to Arthur R. Young, Esq., of Charleston, S. C., as special referee, to take testimony on all issues, legal and equitable, arising therein; and to report the testimony so taken to me as presiding Judge, and that if said report should not be filed in time for a hearing at said term, the cause should be marked "Heard" and argument should take place at such time and place as might be subsequently agreed upon. This order further provided that, by reason of the short period of time remaining under the timber deed within which to cut and remove the timber, that the said timber be sold at such price as might be agreed on by proceeds deposited at interest to await the final determination of the Court and its further orders—said sale to be without prejudice to the rights of either party to the cause, the proceeds of sale standing in lieu and stead of the timber and timber rights aforesaid.

Subsequently, on petition of the defendant, I passed an order, dated April 17, 1920, authorizing the defendant to accept an offer of $5,000 cash, made by Farr-Barnes Lumber Company to it, and to convey the said timber and timber rights to the said Farr-Barnes Lumber Company and deposit the proceeds of sale at interest according to the provisions of said order, in the event that the plaintiff did not, within 10 days from the service of a copy of said order on his attorney, avail himself of certain options which I allowed him and which are fully set forth in said order.

The defendant subsquently reported that a copy of the said order was duly served on the attorney for the plaintiff,

that the options therein contained were not exercised by the plaintiff, and that pursuant to the requirements of the said order it conveyed the said timber and timber rights to the said Farr-Barnes Lumber Company and deposited the purchase price of $5,000 in the savings department of the Bank of Summerville, at interest, to the credit of this case, and subject to, and to await the final determination of the Court and its further orders in this cause.

The report of the special referee not coming in before the adjournment of the Court as aforesaid, the case was marked "Heard." The special referee took all testimony offered on behalf of both parties, reported the same to me, and the cause has been fully argued before me.

I have carefully considered the testimony and the authorities bearing on the questions involved. The testimony clearly and fully shows, and so as to leave no doubt in my mind, that the alleged contract involved in this case was executed in mutual mistake, neither party intending that it should cover the fee, and that their minds have never met on such a proposition; but, on the contrary, that the parties intended only to contract as to the timber and timber rights on the said tract of land. The alleged contract should, therefore, be rescinded and set aside and the parties left in the same status they were in before the execution of the same.

The defendant, however, offers to perform the contract, if it be reformed so as to cover the timber and timber rights only. While I am satisfied of my power to rescind the alleged contract for the reasons given, I am not so sure that the cases would support me in reforming the contract, and in requiring the plaintiff to perform the same as so reformed, nor if I had the power would I care to so exercise it in this case.

The $50 paid to the defendant by the plaintiff when the alleged contract was executed should be returned by the de-

fendant to the plaintiff, but as it has been fully established that the plaintiff prosecuted this case well knowing that the contract he relied on was not enforceable, he should be charged with the costs.

It is therefore ordered, adjudged and decreed that within 20 days from the date of this order the defendant do pay to the plaintiff the sum of $50.

It is further ordered, adjudged and decreed that the Bank of Summerville, upon presentation to it of a certified copy of this order, do pay over to the defendant, Queen Mab Lumber Company, the fund of $5,000, with any interest earned thereon, now held on deposit by it to the credit of this cause.

It is further ordered, adjudged and decreed that the plaintiff do pay the costs and disbursements (i. e., costs paid) of this case.

T. J. MAULDIN, Circuit Judge.

*Mr. John F. Williams,* for appellant, cites: *Cancellation of executed contract should not be decreed except in a clear case on strong and convincing evidence*: 9 C. J. p. 1254, Sec. 195; 21 S. C. 231; 1 Hill Eq. 167; 9 S. C. 20; 46 S. C. 229; 2 Strob. Eq. 154; Bail. Eq. 494; 100 S. C. 161; 69 S. C. 91; 53 S. C. 36; 108 S. C. 417; 100 S. E. 573; 83 Fed. 437. *Nor is bad bargain an excuse*: 100 S. E. 541. *Rescission of contract demands restoration of former status of parties*: 56 S. C. 508; 13 C. J. 618, Sec. 678; Id. Secs. 674, 657, 258, 265, 263, 301; 6 R. C. L., Sec. 319.

*Mr. Legare Walker,* for respondent, cites: *Distinction between mutual and unilateral mistake.* 2 Strob. Eq. (21 S. C. Eq.) 148; 21 S. C. 231. *Relief will be granted where there is mutual mistake*: 24 A. & E. Enc. Law (2nd Ed.) 618, 648; 5 L. R. A. 152; 49 S. C. 230. *To warrant recission proof must be clear and convincing*: 1 Rich. L. (30 S. C. L.) 101; 100 S. C. 157; 55 S. C. 32. *This being law case decision of trial Court is final as to facts*: 2 Bay (2 S.

C. L.) 11; 2 Hill (21 S. C. L.) 657. *If it be held that this
was an equity cause evidence fully supports findings*: 91
S. C. 437; 100 S. C. 157.    *Inadequacy of price a material
fact*: 24 A. & E. Enc. Law, 652; 1 Des. Ch. (1 S. C. Eq.)
250; 5 Peters 264; 8 L. Ed. 120.

March 12, 1921.

The opinion of the Court was delivered by Mr. JUSTICE
COTHRAN.

Action at law for $4,960 damages on account of alleged
breach by defendant of a written contract for the sale of
land, dated October 17, 1917.   The defendant admits the
execution of the contract, but alleges that it owned only
the timber rights on the land; that prior to the formal execu-
tion of the contract, which was but the written evidence of
their agreement, the plaintiff and the defendant had agreed
upon a purchase and sale of the timber rights on the land at
$5,000, the plaintiff being aware of the fact that the title to
the land was. in another;· but that owing to the fact that at
the same time another transaction between the parties in-
volved a contract for the conveyance of the title to another
tract, and the attorney who drew both sets of papers, not be-
ing fully advised by the parties, drew the contract in ques-
tion in like form, the defendant alleges mutual mistake and
asks for a reformation of the contract, and that when so
reformed the plaintiff be required to comply.

The case was referred to a special referee simply to take
the testimony and report same, and upon the testimony so
reported, was tried before Judge Mauldin, a jury trial hav-
ing been duly waived.

The Circuit Judge filed a decree, which will be reported,
finding that "the alleged contract involved in this case was
executed in mutual mistake, neither party intending that it
should cover the fee, and that their minds have never met on
such a propostion; but, on the contrary, that the parties in-

tended only to contract as to the timber and timber rights on the said tract of land," and ordered the contract to be rescinded and the parties restored to their status quo.

The plaintiff appeals and relies upon these propositions:

(1) That there can be no relief from a mutual mistake in the absence of misrepresentation or concealment of fact.

(2) That there is no testimony to sustain the finding of fact of mutual mistake, for two reasons: (a) The burden was upon the defendant to maintain such plea, and the overwhelming weight of the evidence is opposed to such finding; (b) there was not sufficient evidence to show misrepresentation or concealment upon the plaintiff's part.

(3) That rescision of a contract should not be decreed in the absence of misrepresentation or concealment, where it appears that it was entered into by competent parties, at arm's length, when they read or should have read the same.

1. The appellant's position that there can be no relief from a mutual mistake, unless there enter into the mistake an element of misrepresentation or concealment, cannot be sustained for this reason: A contract may be reformed or rescinded, as the justice of the case may require, upon the ground of mistake, under these circumstances: (1) Where the mistake is mutual and is in reference to the facts, or supposed facts, upon which the contract is based; (2) where the mistake is mutual and consists in the omission or insertion of some material element affecting the subject-matter or the terms and stipulations of the contract, inconsistent with those of the parol agreement which necessarily preceded it; (3) where the mistake is not mutual, unilateral, and has been induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation or rescission, without negligence on the part of the party claiming the right; (4) where the mistake is not mutual, but unilateral, and is accompanied by very strong and extra-

ordinary circumstances, showing imbecility. or something which would make it a great wrong to enforce the agreement, sustained by competent testimony of the clearest kind. *Kennerty v. Etiwan Co.*, 21 S. C. 226, 53 Am. Rep. 669; *Forrester v. Moon*, 100 S. C. 157, 84 S. E. 532.

It thus appears that both the first and second conditions, instances of mutual mistake, are independent of the elements of misrepresentation and concealment.

2.   The appellant's contentions that there is no testimony to sustain the finding of fact by the Circuit Judge of 2, 3   a mutual mistake, and that the overwhelming weight of the testimony is against such finding, cannot be sustained.   The demand of the defendant for affirmative relief, in the reformation of the contract, presents an equitable issue.   The findings of fact by the Circuit Judge will be sustained unless the appellant may show that they are against the preponderance of the evidence, the burden of which is upon him.   He has not only failed to sustain this burden, but, after careful review of the testimony, we are entirely satisfied with the conclusions of the Circuit Judge. The defendant owned only the timber rights on the land, and we begin with the natural assumption that they would not intend to sell something they did not own.   We are satisfied from the evidence that, when the defendant bought the timber rights in 1906, the plaintiff was informed of the limitations of their holding; that in 1916 conditions had not changed; that in March, 1917, the plaintiff and Farr, president of the defendant company, were in negotiation about the timber on both this tract and another, no reference being made to the fee-simple title to the land; that in May, 1917, Farr wrote to the plaintiff to know whether or not the deal was off "for the purchase of the Peeples and Courtney tracts of timber," about which they had been negotiating in . March, the Courtney tract being the one now in question; that in July, 1917, the plaintiff was at Farr's office in

Columbia and opened negotiations for the purchase of the Mears tract which the defendant owned in fee; he admits that Farr proposed that if he would buy the Courtney timber at $5,000 he would sell him the Mears tract for $35,000; that in October, 1917, they again met in Columbia to close both deals, for the Mears tract in fee, and for the timber rights in the Courtney tract, the plaintiff yielding commissions of 10 per cent.. on the Courtney deal in order to secure the Mears tract.

We are satisfied that neither party had any other thought than that, so far as the Courtney tract was concerned, the one was selling and the other buying only what the plaintiff knew the defendant possessed, the timber rights. After they met in Farr's office in Columbia and agreed upon both deals, an attorney was called in to prepare the contracts. The papers relating to the Mears deal were given to the attorney and the plat of the Courtney land. From a lack of information which should have been communicated to the attorney by either the plaintiff or Farr, or both, or from a misunderstanding of directions, the attorney prepared the two contracts as if a sale of both tracts of land, and not the Mears tract and the timber rights of the Courtney tract, was intended. The contracts in that form were signed up, apparently not having been read over by either party. The $50 cash payment was made by the plaintiff, and each party received a copy of the contract. The remainder of the purchase price of the Courtney deal, $4,950, was due November 17th. On the 12th the defendant drew upon the plaintiff for this amount, payable on the 17th, attached a deed conveying the timber rights, and forwarded it through the banks for collection. Upon notification the plaintiff stated that he had given a third party an option upon the deal and the draft should have been drawn upon him. He does not appear to have called for an inspection of the deed, although he had had the contract in his possession for a month. Prior to that time Farr had discovered the mistake and

called the plaintiff's attention to it; the plaintiff stating to him that he understood what he was buying, that is, only the timber rights, that he knew a mistake had been made, and that there would be no trouble. The plaintiff denies this statement, but it is corroborated by Mrs. Fairey, a stenographer for Farr at the time, and we are satisfied of its truth.

3. The appellant further contends that the Circuit Judge erred in decreeing a rescision of the contract, not upon the ground that there was no evidence of a mutual mistake, but no evidence of misrepresentation or concealment, and in this we think he is correct. The Circuit Court has misconceived the legal result of his findings of fact. He does not find that there was any fraud, misrepresentation, concealment, imposition or other conduct on the part of the plaintiff which are the usual grounds for rescinding a contract. While we apprehend that such an instance of mutual mistake might be established as would avoid the contract *ab initio,* as when it related to the facts or supposed facts upon which it is based, and thus justify a decree of rescision, we do not think that the mutual mistake established in this case is of such character. The theory of the defendant, supported as we think by the evidence, is that there was a valid contract between them and the plaintiff for the sale and purchase of the timber rights, but that the written contract, the evidence of their agreement, does not express the terms of that agreement, but by mistake contains terms contrary to the common intention of the parties; that for that reason they are entitled to have the contract accordingly reformed, and to have it specifically enforced when thus reformed. The Circuit Judge was in error in decreeing a rescision of the contract, as the following authorities show:

"To entitle the plaintiff to a reformation of the contract, he must prove that it was the intention of both parties to make

a contract such as he sought to have established and that this intention was frustrated, either from some fraud, accident, or mutual mistake of the parties." *Jackson v. Andrews,* 59 N. Y. 244; *Kilmer v. Smith,* 77 N. Y. 226, 33 Am. Rep. 613.

"Where an instrument is drawn and executed which professes or is intended to carry a prior agreement into execution, whether in writing or by parol, which by mistake violates or fails to fulfill the manifest intention of the parties, equity, if the proof is clear, will correct the mistakes, so as to produce a conformity of the written instrument to the antecedent agreement of the parties." *Ivinson v. Hutton,* 98 U. S. 79, 25 L. Ed. 66.

"The reformation of written contracts for fraud or mistake is an ordinary head of equity jurisdiction. * * * Where the agreement as reduced to writing omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected so as to make it conform to their real intent. The parties will be placed as they would have stood if the mistake had not occurred," *Moffett v. Rochester,* 178 U. S. 373, 20 Sup. Ct. 957, 44 L. Ed. 1108.

"The Courts will interfere where * * * the minds of the parties, * * * in the case of a written contract * * * did not meet on the terms expressed in the writing, but did meet on other terms not there appearing." 1 Story, Eq. Jur. (14th Ed.) pp. 161, 204 (notes).

"It follows that the mistake which it (the Court of Equity) may correct in such writing must be, as it is usually expressed, the mistake of both parties to it; that is, such a mistake in the drafting of the writing as makes it convey the intent or meaning of neither party to the contract." 1 Story, Eq. Jur. (14th Ed.) § 162.

"The phrase 'mutual mistake,' as used in equity, means a mistake common to all the parties to a written contract or instrument, and it usually relates to a mistake concerning

the contents or the legal effect of the contract or instrument. A mutual mistake which will afford ground for relief from a contract by reforming it, means a mistake reciprocal and common to both parties when each alike labors under the misconception in respect to the terms of the written instrument." 1 Story, Eq. Jur. (14th Ed.) § 162.

"Where an instrument is drawn and executed which professes or is intended to carry a prior agreement into execution, whether in writing or by parol, which by mistake violates or fails to fulfill the manifest intention of the parties, equity, if the proof is clear, will correct the mistakes, so as to produce a conformity of the written instrument to the agreement of the parties." 1 Story, Eq. Jur. (14th Ed.) § 159.

"If through mistake or accident the instrument has been incorrectly framed, or if the transaction is vitiated by illegality or fraud, or if the instrument was executed in ignorance or mistake of facts material to its operation, the error may be corrected or the erroneous transaction may be rescinded." 1 Story, Eq. Jur. (14th Ed.) § 159.

4. The appellant further contends that rescission of the contract should not have been decreed for the reason that it was entered into by competent parties, at arm's length, and that they read or should have read it before execution. Though scarcely raising the issue of negligence on the part of the defendant, we will consider the exception as fairly raising that issue. We have held above that rescision of the contract should not have been decreed, and will therefore consider this objection as applicable to the defendant's demand for a reformation of the contract.

We are of the opinion that much of the confusion incident to this question would be dissipated if it should be recognized as a distinct branch of equity jurisprudence to reform a written contract where it unques-

tionably appears that, contrary to the intention of both parties, it does not express the prior oral agreement of the parties in a material particular, irrespective of the cause of such discord. Where this discord appears, some one has blundered; if the paper was prepared by an attorney or scrivener, he has either not been sufficiently informed of the agreement of the parties by them, or has erroneously interpreted his information and directions; if not sufficiently informed, it was the fault of the parties; if when presented for their signatures they thought or assumed that no discord existed, their signing would be the result of their co-operative fault; if one of them discovered the discord and remained silent, it would be a fraud upon, the other not to call attention to it. In any conceivable event, therefore, reformation would be decreed. Why then not recognize it as a distinct branch of equity jurisprudence and be relieved of the reduction of the facts to a case of mutual mistake? Such a reduction is to a large extent a matter of argument, if not fiction. As is said in a note, 1 Story, Eq. Jur. (14th Ed.) at pages 162, 205, speaking of mutual mistake in connection with this ground for reformation:

It is "not a perfectly accurate term for the case, as the mistake is in the writing, and not in the agreement. * * * This circumstance has often led Courts to say that there must be a mutual mistake to authorize the reformation of a contract, when it is only necessary to say that the intention with regard to a term sought to be imported into the writing must be mutual, that is that term has been part of the contract actually made."

In other words, if the contract does not express the terms of the prior agreement, contrary to the intention of both parties, a case for reformation is presented. Further the author of the note says:

"It is clear that it need not be shown, as necessary to this result, either that the defendant (i. e., the party resisting the

reformation, we interpolate) was mistaken concerning the written instrument, or that he was guilty of fraud in putting it or having it put into the improper form. He merely may have seen that it was not in conformity with the agreement and kept silent; but this will not prevent rectification on satisfactory evidence of what was agreed."

We are thoroughly convinced that the written contract did not express the terms of the parol agreement between the parties; that the discord was due to the fault of both parties in not sufficiently informing the attorney as to the terms of the agreement between them, or of his failure to properly interpret that information, and to the failure of both parties not to carefully read the contract before signing and to detect the discord; that both parties honestly believed at the time of the execution of the contract, or confidingly assumed, that the written contract correctly stated the terms of that agreement.

Under these circumstances we assert that it would be a monstrous perversion of justice to deny the right of reformation upon the ground that the defendant was negligent in not reading the contract before signing it. It was as much the duty of the plaintiff to read the contract and see that it conformed to the agreement as it was the defendant's. If the plaintiff read it and discovered the discord and allowed the execution to proceed intending to take advantage of it, he does not assume a position that commends him to a Court of Equity. If he did not read it and thereby discover the discord, he himself was guilty of negligence. Is he to be relieved of the consequence of his negligence which was beneficial to him, and the defendant charged with the consequence of the same act of negligence which was prejudicial to him? In other words, is immunity from negligence to be determined by the fact of its beneficial consequences? The English authorities declare that relief based upon mutual mistake of fact is not to be refused on the ground that the party claiming it had the

means of knowledge at the time of the mistake.   See Story,
Eq. Jur. (14th Ed.) p. 209.   The author of the note per-
tinently states:

"It is conceived that the English rule is the correct one,
so far as the mere question of failing to inquire is concerned;
for how can a man be entitled to property   by an unin-
tended gift simply on the ground that the giver was negli
gent?"

The case of *Forrester v. Moon,* 100 S. C. 157, 84 S. E,
532, cited by appellant, is not at all controlling upon the facts
of the case at bar.   There the plaintiff owned property ad
joining the railroad right of way.   Her first idea was to
lay off a street upon her own property, paralleled with the
line of the right of way, subdivide her property into lots
fronting on this street, and sell them.   She had a plat made
carrying out this idea.   Afterwards she changed her mind
and had a new plat made, omitting the street, and fronting
the lots directly on the right of way.   One of the lots she
sold to the defendant.   She then went with him to her at-
torney, presented to him the new plat, and directed him to
draw a deed conveying the lot to the defendant, which he
did in her presence and that of the defendant, using the new
plat which omitted the street.   The deed was executed,
drawn as she had directed her lawyer to draw it.   The de
fendant paid the purchase price, had his deed recorded, and
went into possession.   The plaintiff then brought suit
against the purchaser of the lot, contending that there was a
mistake in the deed, that she did not intend to convey up to
the right of way, but to the street indicated on the first plat
Under these circumstances, even if she could have convinced
the Court that she had made a mistake, which is extremely
doubtful, she utterly failed to show that the purchaser had
done so, or that her mistake was due to misconduct on his
part, or to her own imbecility, or that other circumstances
existed making it a very great wrong to sustain the deed.

The Court, following the Kennerty case, held that the plaintiff was not entitled to a reformation of the deed.

The cases relied upon by the appellant, upon this question of negligence, are, without exception, cases involving the mistake only of the party claiming reformation, cases of unilateral and not mutual mistake, as to which there does not appear to be any doubt of the application of the doctrine. *Kennerty v. Etiwan Co.,* 21 S. C. 226, 53 Am. Rep. 669; *Forrester v. Moon,* 100 S. C. 157, 84 S. E. 532; *Montgomery v. Scott,* 9 S. C. 20, 30 Am. Rep. 1; *Coates v. Early,* 46 S. C. 220, 24 S. E. 305; *Murrel v. Murrel,* 2 Strob. Eq. 148, 49 Am. Dec. 664; *Gilchrist v. Martin,* Bail, Eq. 494; *Lumber Co. v. Matheson,* 69 S. C. 91, 48 S. E. 111; *Baum v. Raley,* 53 S. C. 32, 30 S. E. 713, *Case Threshing Co. v. Dyches,* 108 S. C. 417, 94 S. E. 1051; *Baldwin v. Tel. Co.,* 78 S. C. 419, 59 S. E. 67.

The case of *Montgomery v. Scott,* 9 S. C. 20, 30 Am. Rep. 1, has little, if any, application to the facts of this case. It and all the cases cited in the opinion involve unilateral mistakes and the rights of innocent third parties. The kernel of the decision is in the following extract:

"The plaintiff knew that she was signing some kind of a written obligation, and if she, through carelessness or negligence, signed a paper of a different character from that which she intended, and that paper has been received by an innocent third person, for value, she ought not to be allowed, when called upon to respond to the obligations imposed by the terms of the paper," to contest her liability upon the ground of mistake.

The Circuit Judge should therefore have decreed a reformation of the written contract and specific performance by the plaintiff according to the terms of such reformed contract in harmony with the oral contract which preceded it.

468       JUMPER v. LUMBER CO.

Now this extraordinary situation is presented: The Circuit Judge decreed rescission of the contract; this Court declares that to have have been erroneous; the Circuit Judge did not decree reformation and specific performance; this Court declares that also to have been erroneous; the plaintiff has appealed from the order decreeing resicion; the defendant has not appealed from the order refusing reformation.

In the consent order of reference there is a provision that, in consideration of the brief life of the timber contract held by the defendant, the timber be sold and the proceeds deposited in the bank, to await the final determination of this case; said proceeds to stand in lieu of the timber and timber rights without prejudice to the rights of either party. Pursuant to this and a subsequent order of the Court, which does not appear to be objected to by the plaintiff, the timber and timber rights were sold for $5,000 cash, and the proceeds deposited in the savings department of the Bank of Summerville, at interest, to the credit of this case and subject to and to await the final determination of the Circuit Court and its further orders in this cause. The parties have therefore by these orders, unobjected to, transferred the contest as to their respective rights under the contract, for damages on account of its alleged breach for a recission of the contract for a reformation of the contract and specific performance, to the fund in bank. We hold that the plaintiff is not entitled to damages on account of the alleged breach, and it is apparent that whether the defendant be entitled to a recission of the contract or a reformation of it, the result is the same; he is entitled to the said funds on deposit. It follows that the administrative portion of the decree is, in its result, the proper determination of the controversy.

The judgment of this Court is that the judgment of the Circuit Court, subject to the conclusions herein announced, be affirmed.