Glenn B. HESTER and J. B. Fuqua,
Plaintiffs,

v.

NEW AMSTERDAM CASUALTY COMPANY, a corporation, Keith T. Jones and Estelle J. Jones, and Edward F. Egan, Defendants.

Civ. A. No. 8748.

United States District Court
D. South Carolina,
Florence Division.

May 5, 1967.

James P. Mozingo, III, D. Kenneth Baker, Darlington, S. C., for plaintiffs.

Willcox, Hardee, Houck, Palmer & O'Farrell, Hugh L. Willcox, Florence, S. C., for defendant New Amsterdam Casualty Co.

DONALD RUSSELL, District Judge.

This matter is before me upon motion of the plaintiffs for summary judgment against the defendant New Amsterdam Casualty Company (hereinafter referred to as Surety). The motion is based upon an alleged settlement agreement, represented by an exchange of letters between counsel for the plaintiffs and counsel for the Surety.

While stated in tort for fraud, this action, so far as the present motion is concerned, involves the question whether the plaintiffs are legal assignees, entitled to enforce a surety contract issued by the defendant Surety to guarantee a faithful performance by a third-party of the latter's contract to purchase and pay for timber cut on lands acquired by the plaintiffs from the original assured under the surety contract.[1]

The defense asserted by the Surety is that no valid assignment of the surety contract in favor of the plaintiffs was ever had.

After joinder of issue and various discovery proceedings, negotiations for settlement were begun between counsel for the parties. In the course of such negotiations, counsel for the defendant Surety wrote counsel for the plaintiffs:

"Our people have authorized us to propose to you by way of settlement that New Amsterdam will recognize the validity of the Bond running to your clients with payment of the premium during the life of the Bond, and if we can work out a settlement on this basis we would like to do so as promptly as possible so that we can be spared the necessity of further trouble and expense."

Some two weeks later, counsel for the plaintiffs replied:

"Pursuant to our discussion yesterday regarding this matter, this will confirm the agreement of our clients to accept the settlement proposal of New Amsterdam to recognize the validity of the bond running to our clients, with payment of the premium during the life of the bond being conceded."

The attorneys for the plaintiffs, also, stated in this letter that the purchaser of the timber, whose performance the surety contract was to cover, was "defunct", and that $75,000.00 was immediately due and payable under the surety contract. They, also, suggested that, "If New Amsterdam is interested, our clients would like to explore possible alternative methods of payment, which we feel would result in more favorable tax treatment to both New Amsterdam and to our clients." There letter concluded:

"The proposed settlement will be placed in the form of a Court Order, which I would like to discuss with you at your convenience so that we may begin preparation of same.

"In the event that your client would prefer to accept any alternative, however, it might be better that we with-

---

1. The sellers, from whom the plaintiffs acquired the real estate herein and the original assured under the surety contract issued by the defendant Surety company, are, also, parties defendant to the fraud suit; but they are in no way involved in this motion, though, it may well be that, if the motion were sustained, the action against them would be dismissed.

hold discussion of a formal order until you have their reply."

Shortly after receipt of this letter, counsel for the defendant Surety answered, saying:

"This will acknowledge receipt of your letter of July 22, advising us of the unfortunate situation that has developed in connection with the Valdosta Plywood Company. These developments will necessarily require that we completely reappraise this entire situation.

"When New Amsterdam made the proposal that the bond be recognized as valid, it was assumed that Valdosta Plywood was carrying out the terms of their agreement.

\* \* \* \* \* \*

"Your letter of July 22 seems to imply that the agreement to reinstate bond and dismiss the suit had definitely been agreed upon and consummated. We want you to understand, however, that this was only a proposal, and in view of the changed situation, it would be necessary for us to make a complete reappraisal."

This repudiation of "the proposed settlement" resulted in the present motion of the plaintiff for judgment against the defendant Surety company.

■■■ At the outset, it seems appropriate to observe that it is perhaps arguable whether the exchange of letters herein was sufficiently definite and final to constitute a settlement agreement. In his letter, proposing a "way of settlement", counsel for the Surety concluded his proposal with the qualification "if we can work out a settlement on this basis we would like to do so as promptly as possible \* \* \*." This expression, it might well be urged, colored the offer with a lack of finality. Cf. McLaurin v. Hamer (1932), 165 S.C. 411, 420, 164 S.E. 2; Weeks et al. v. Graham (1918), 110 S.C. 150, 152, 96 S.E. 399; Holliday v. Pegram (1911), 89 S.C. 73, 80–81, 71 S.E. 367; Julius Kayser & Co. v. Textron, Incorporated (C.C.A.S.C.1956), 228 F.2d 783, 790;

Orient Mid-East Great Lakes Service v. International Export Lines (4 Cir., 1963), 315 F.2d 519, 524. See, also, Oeland, et al. v. Kimbrell's Furniture Co., Inc. (1947), 210 S.C. 223, 227, 42 S.E.2d 228. And this lack of finality was carried over into the letter of plaintiffs' counsel, which it is claimed amounted to an acceptance of the Surety's offer. Counsel for the plaintiffs indicated in the concluding paragraph of their letter that the "proposed settlement" was not to be effected by the exchange of letters but was to be "placed in the form of a Court Order, which I would like to discuss with you at your convenience so that we may begin preparation of same." The possible want of finality in the offer and acceptance was, however, not pressed in argument before me and, in keeping with the general thrust of the positions taken by the parties themselves, I shall treat the exchange of letters as representing a settlement agreement between the parties during the pendency of the action and consider whether, under the facts presented, the Surety should be given relief from the agreement.

The procedure followed by the plaintiffs for seeking enforcement of the alleged settlement agreement by way of a motion for summary judgment conforms to the customary pattern established in connection with agreements and stipulations entered into by the parties in the course of the legal proceedings. 83 C.J.S. Stipulations § 31 (b), p. 86. In dealing with such motions, however, it seems settled that these agreements and stipulations "are not as irrevocable as other contracts." Dalton v. Bowers (C.C.A.N.Y.1931), 53 F.2d 373, 374; Brast v. Winding Gulf Colliery Co. (C.C.A.Va.1938), 94 F.2d 179, 181. Being subject to the Court's control, the Court, upon a proper showing, has the power to relieve the parties therefrom. Maryland Casualty Co. v. Rickenbaker (C.C.A.S.C.1944), 146 F.2d 751, 753. Especially may such power be exercised where, as here, it was contemplated, to quote the language

of plaintiffs' counsel, "The proposed settlement will be placed in the form of a Court Order, which I would like to discuss with you at your convenience so that we may begin preparation of same."

██ The circumstances under which the Court will relieve against stipulations, agreements and arrangements made by the parties during the pendency of an action have been often stated. The Court may, it seems established, set them aside, on timely application, for inadvertence, improvidence or excusable neglect by either party if there is no prejudice to the opposite party and it would be inequitable or oppressive to hold the parties to the agreement. Annotation, 161 A.L.R. 1180. A pithy statement of the applicable rule was set forth in Brast v. Winding Gulf Colliery Co., supra, 94 F.2d p. 181:

"Where facts subsequently developed show, with respect to a particular matter, that a stipulation was inadvertently signed, the party may be relieved where there is no prejudice to the opposite party. Carnegie Steel Co. v. Cambria Iron Company, 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968."

It is suggested in the A.L.R. annotation cited that agreements for settlements made in the pendency of the action may require a stronger showing for vacation than other stipulations. 161 A.L.R. 1192. The cases cited in support, however, generally involved situations in which the agreed settlement had been partially performed and it would accordingly be inequitable to vacate or where there had been inexcusable delay in disavowing the settlement. Certainly, this more rigorous rule was not applied by the Court in vacating the settlement in the Brast case, supra, *where, as here, there had not been part performance or change of position by the other party.* And, in Greenspahn v. Joseph E. Seagram & Sons (2 Cir. 1951), 186 F.2d 616, 620, where relief was denied, the Court drew no distinction between a "settlement agreement" and other stipulations,

stating that, to obtain relief from a "settlement agreement", "the moving party must show that unless relieved he will suffer a substantial injustice and that the other parties to the stipulation can be restored to the same position they would have had if no agreement had been made."

██ To deny a party the right to be relieved of an executory agreement made in connection with a suit, which agreement was made as a result of unilateral "mistake, inadvertence, surprise or excusable neglect" and which may be vacated without prejudice to the other party, would be contrary to the liberal policy established by Rule 60(b) of the Rules of Civil Procedure. It would certainly be an anomalous situation and an obvious injustice, if relief from a judgment, agreed to because of a unilateral mistake or inadvertence, might be had under Rule 60(b) but similar relief from a settlement agreement, especially where, as here, it was contemplated it would subsequently be incorporated in an order and judgment of the Court, could not be had. No logical reason would invest an agreement of the parties, unconfirmed by the Court, with greater standing than a solemn judgment of the Court, based on the agreement of the parties. While, of course, Rule 60(b) does not apply to this situation, it is expressive of a judicial policy which should be given weight in dealing with motions of this character and which represents the modern trend in the decisions.

██ As a matter of fact, if this exchange of letters were not an incident in a legal proceeding and were regarded as an ordinary contract representing an accord and satisfaction, the Court would not be powerless, under a proper showing, to give relief by way of rescission from a unilateral mistake of fact or a mistake of law. Annotation, 59 A.L.R. 809, et seq. As Professor Corbin well phrases it, "Statements are exceedingly common, both in texts and in court opinions, that relief will not be given on the ground of mistake unless the mistake is 'mutual'. Such a broad generalization is mislead-

ing and untrue." Corbin on Contracts, vol. 3, sec. 608, p. 669.

Many of the cases declaring that a unilateral mistake will not support relief fail to make the distinction between a right to rescission and a right to reformation. In Smith v. Mackin (1871), 4 Lans. (N.Y.) 41, an early leading case on this point, the Court, after observing that where reformation is sought the mistake must be mutual, said that the rule is "quite different when the relief sought is the rescission of the contract altogether. This goes upon the ground of relieving any party who has become bound by a contract which he never intended to make, and never would have made but for a mistake he was laboring under in regard to a material fact. * * This distinction has been sometimes overlooked by courts in the application of the general rule, and some confusion and uncertainty thereby created. But it stands upon sound reason, and is inherent in the very nature of the different remedies."

In the early case of Hearne v. Marine Insurance Company (1874), 87 U.S. 488, 20 Wall. 488, 22 L.Ed. 395, Mr. Justice Swayne noted this distinction between suits for rescission and those for reformation and set forth the proper rule in this sentence (87 U.S. 491, 22 L.Ed. 395): "A mistake on one side may be a ground for rescinding, but not for reforming, a contract." This language is quoted with approval and followed in Moffett, Hodgkins & Clark Co. v. City of Rochester (1899), 178 U.S. 373, 385, 20 S.Ct. 957, 44 L.Ed. 1108. Again, in Lange v. United States (4 Cir., 1941), 120 F.2d 886, 889, the Court apparently approved the same principle that, in a suit involving relief by way of rescission from a contract executed under a unilateral mistake, "though the mistake was the result of the negligence of the defendants, relief should be granted to the defendants inasmuch as the contract was still executory and inasmuch as plaintiff would not be prejudiced by the alteration." And this principle is supported by Jumper v. Queen Mab Lumber Co.

(1921), 115 S.C. 452, 458–459, 106 S.E. 473, where the Court said that a contract may be rescinded "where the mistake is not mutual, but unilateral, and is accompanied by very strong and extraordinary circumstances, * * *."

Many of the cases illustrative of the principle that, under proper circumstances, rescission may be had for a "mistake on one side" have involved bids submitted as a result of a mistake in calculation. Irrespective of whether the offer has been accepted or not, relief in such cases has been afforded for unilateral mistake "where the notice (of mistake) was reasonably prompt and the offeree has not altered its position so that relief would work a hardship upon it, and there are no other circumstances which would render it inequitable to grant such relief." Annotation, 52 A.L. R.2d 792, at p. 803.

Especially has the right to rescind for unilateral mistake been sustained where the other party, from the very nature of the offer, should have been put on notice that the offerer was acting under a mistaken notion, that is, where the mistake should have been "palpable to the offeree." Potucek v. Cordeleria Lourdes (10 Cir., 1962), 310 F.2d 527, 532, cert. den. 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed.2d 734; Peerless Casualty Company v. Housing Authority (5 Cir. 1955), 228 F.2d 376, 379; C. N. Monroe Manufacturing Company v. United States (D.C.Mich.1956), 143 F.Supp. 449, 451; Standard Accident Insurance Company v. Wilmans (D.C.Ark.1963), 214 F.Supp. 53, 61; State of Connecticut v. F. H. McGraw & Co. (D.C.Conn. 1941), 41 F.Supp. 369, 374. As it is put in 1 Williston, Contracts (3d ed. 1957), sec. 94, an "offeree will not be permitted to snap up an offer that is too good to be true; no agreement based on such an offer can be enforced by the acceptor." See, also, Lange v. United States, supra.

Of course, this right to rescission cannot be granted if the other party had so changed his position that he would be prejudiced by the rescission. Noland Company v. Graver Tank & Man-

ufacturing Co. (4 Cir. 1962), 301 F.2d 43, 47. " 'A court of equity is always reluctant to rescind, unless the parties can be put back in statu quo.' " Heifetz Metal Crafts, Inc. v. Peter Kiewit Sons' Co. (8 Cir. 1959), 264 F.2d 435, 440, quoting Grymes v. Sanders, et al. (1876), 93 U.S. 55, 62, 23 L.Ed. 798. Since there cannot be such restoration to the status quo in the case of a contract wholly or partially performed, the principle is settled that a " 'unilateral mistake will not justify rescission of a wholly or partly executed contract.' " United States Plywood Corp. v. Hudson Lumber Co. (D.C. N.Y.1953), 113 F.Supp. 529, 533, app. dismissed 2 Cir., 210 F.2d 462, quoting Williston on Contracts (Rev.Ed.), sec. 1580.

There has been no change of position by the plaintiffs as a result of the offer herein. There has been no part performance. The parties can easily be restored, without prejudice, to the status quo. The real question is thus reduced to whether the Surety has made such a showing of mistake and inadvertence as will warrant relief. This requires a review of the background of the offer. The Surety made, through its counsel, an offer of settlement. It was accepted by the plaintiffs, though—and this is important, as I have already indicated— they pointed out in the concluding paragraph of their letter that the "proposed settlement" was to be finalized by an order of this Court. When the Surety received this letter, it was informed for the first time that the party, whose performance was guaranteed under the surety bond, was "defunct" and that, if it was bound by its surety bond, it had a substantial immediate liability, with possible future complete liability. Because of this, it sought promptly to disavow any offer of settlement.

It is only fair to point out that the plaintiffs were in no way responsible for the want of knowledge and the mistake of the defendant Surety. They did nothing to mislead or deceive the Surety. So much the Surety concedes. On the other hand, it must be recognized that the mistake went to the very heart of the offer. Its materiality is unquestionable. It must be recognized, too, that the two parties did not deal on the basis of equality of knowledge. The plaintiffs, since, by assignment, they were the beneficiaries of the contract with the third-party and entitled to the periodic payments due thereunder, were necessarily cognizant of the third-party's default and the consequent immediate (as distinguished from contingent) liability of the surety for such default if its offer were accepted. It is admitted, on the other hand, that the defendant Surety was ignorant of the default; and it is argued by the Surety that the plaintiffs, when they received the letter of Surety's counsel, must have realized that the Surety was ignorant of the third-party's default. It contends that it was "palpable" from Surety's letter that it assumed it was merely undertaking a contingent liability under its bond and did not understand that, in making its offer, it was admitting an immediate present liability to the plaintiffs for $75,000.00 or that the third-party was "defunct", changing the surety bond from a contingent to an immediate form of liability. There is considerable persuasiveness in this argument of the Surety which, as I have indicated, is supported by authority. It is a circumstance to be considered in the light of all the other circumstances in this case.

 The plaintiffs, on the other hand, urge that the Surety's mistake was the result of its own negligence in failing to keep itself informed of the performance by the third-party, its obligee, under its surety bond. They contend that such negligence precludes any relief for the Surety. In answer, the defendant Surety emphasizes that, by reason of the purchase by the plaintiffs (to whom it claims it owes no obligation, since they never acquired a valid assignment of the surety bond), its liability ended and, having no further interest in the performance by the third-party, it would not be expected to keep in touch with such performance. This argument, it must be

conceded, is supported by considerable logic, even though I doubt that it should completely justify the Surety in making no inquiry about the status of the contract covered by its surety bond before making its offer. The Surety was, in some degree at least, negligent in failing to make any inquiry before submitting its offer. But, as the Court in Maryland Casualty Company v. Krasnek (Fla. 1965), 174 So.2d 541, 543, observed, "after all, mistakes do not ordinarily result from the exercise of due care." Professor Corbin in pointing out that negligence, would not bar relief if not gross, added that "most errors in computation are careless in some degree." Corbin on Contracts, p. 683. As the Court phrased it in Anderson Brothers Corporation v. O'Meara (5 Cir. 1962), 306 F.2d 672, 677, "Whether the mistaken party's negligence will preclude relief depends to a great extent upon the circumstances in each instance." Applying this principle, the Court in Moffett, Hodgkins & Clark Co. v. City of Rochester, supra, 178 U.S. at p. 384, 20 S.Ct. at p. 961, held that, "We do not think the negligence was sufficient to preclude a claim for relief if the mistakes justified it." To the same effect: Skelton v. Federal Surety Co., (10 Cir. 1926), 15 F.2d 756, 759; Columbian Nat. Life Ins. Co. v. Black (10 Cir. 1929), 35 F.2d 571, 575, 71 A.L.R. 128; Sawyer v. Mid-Continent Petroleum Corporation (10 Cir. 1956), 236 F.2d 518, 521. I am of opinion the same ruling should apply here. The negligence of the Surety was not of such a character as "to preclude a claim for relief."

While the Surety may have been negligent in some degree in making an offer of settlement without acquainting itself with all the circumstances surrounding the performance of the contract covered by its surety bond, I have concluded, that, because of the want of equal knowledge of the material facts relating to the settlement, the want of prejudice to the plaintiffs, and the hardship of holding the Surety to the settlement offer, made under an obvious mistake of fact, and without knowledge that it was

acknowledging immediate liability for a substantial money judgment under its bond, to deny the motion of the plaintiffs for summary judgment.

And, it is so ordered.