Mr. Justice SWAYNE
 

 having stated the case,.delivered
 

 -the opinion of the court.
 

 . The reformation of written contracts for fraud or mistake' 'is an ordinary head of equity-jurisdiction. The-rules which govern the exercise of this power are founded in good sense and.are well settled.- Where the agreement as reduced-to -writing, omits or contains térms of stipulations contrary to the common intention of the parties, the instrument will -be corrected so as to make it couform to their real intent. The parties will be placed as they would have stood if the mis-, .take had not-occurred.
 
 *
 

 Thé party alleging the mistake must show exactly in-what it.consists, and the correction that should be made. The evidence must be such as^to.leave no reasonable dpubt upon .the mind of the court as to éither of these points.
 
 †
 
 The
 
 *491
 
 mistake must be mutual and common to both parties to the instrument. It must appear that both havó done what neither intended.
 
 *
 
 A mistake on one side may ,be a ground for rescinding, but not for reforming, a contract.
 
 †
 
 Where the minds of the parties have not met there is no contract, and'hence none to he rectified.
 
 ‡
 

 This jurisdiction is applied, where necessary and'proper, to the reformation of contracts of insurance.
 
 §
 

 Here the application was to insure on a charter “ from Liverpool to Cuba, and load for Europe,
 
 via
 
 Ealmouth,” &c. This was indefinite as to Cuba, and may have been regarded by the company as ambiguous. The answer'was, as “requested, we have entered $5000 on charter
 
 to fort in Cuba, and thence to
 
 port of advice and discharge in Europe.” This answer shows clearly two things: (1.) How the company understood the proposition. (2.) That they agreed to iusure according to that understanding, and not otherwise.
 

 There was no mistake nor misapprehension on their part. The circumstances show there could be none. ’
 

 The correspondence between the parties constituted a preliminary agreement. The answer to Hearne’s proposal was plain and explicit. It admitted but of one construction. He was bound carefully to read it, and it is to be presumed he did so. In that event there wm^ as little room for misapprehension on his part as on the part of the company. Such a result was hardly possible. There is nothing in the-evidence which tends to show that any occurred. The inference of full and correct knowledge is inevitable. It is
 
 *492
 
 as satisfactory to the judicial mind as direct evidence to the same effect would be.
 

 So far, the complainant’s case is .as weak in equity as it was at law.
 

 ■ But it is said there was a usage that vessels going'to Cuba might visit at least two ports — one for discharge and the other for reloading. It is insisted that this usage authorized the voyage to Manzanillo; that the voyage.was not a deviation ; that it in no wise affected the liability of the company in equity; and that hence, the contract of the parties in this particular should be reformed accordingly.
 

 It is notj necessary that the usage relied upon in cases like this should have been eommuyioated or known to the assurers- Lord Mansfield said: “Every underwriter is presumed. to be acquainted with the practice of the trade he insures; and if he does not know it, he ought to inform .himself.”
 
 *
 

 ,,-Usage is admissible to explain an ambiguity, but it is never received to contradict what is plain in a written contract.
 
 †
 
 If the words employed have an established legal meaning, parol, evidence that .the parties intended to use them iii a different sense will be rejected, unless if interpreted according to their legal acceptation, they would be insensible with reference to the context or the extrinsic facts.
 
 ‡
 
 If no such consequence is involved, proof of usage is wholly inadmissible to contradict or in any wise to vary their eftect.
 
 §
 
 In no case can it be receivéd where it is inconsistent with, or repugnant to, the contract. Otherwisé it would not explain, but contradict and change the contract which the parties have made — substituting for it another
 
 *493
 
 and different one, which they did not -make.
 
 *
 
 To establish such inconsistency it is not nécessary that.it should be excluded in express terms. It is sufficient if it appéar that the parties intended to he governed by what is written aud, not by anything else.
 
 †
 

 The'principle of the admission of such testimony is that' the court may be placed, in regard to the surrounding circumstances, as nearly as possible in the situation of the par ties — the question being, what did they mean by the language they employed ?
 
 ‡
 
 What is-implied is as effectual as what is expressed.
 
 §
 
 The expression and the' implication in this case are equally clear. It is expressed that the vessel should proceed to a port in Cuba, and thence to Europe. It is implied that she should visit no other port in Cuba.
 
 JEIxpressüm fácil taciturn cessare.
 
 Under these circumstances, usage can have no application, and proof of its existence is inadmissible. But the usage relied upon is npt sustained, by the evidence.
 

 It-appears that a large proportion of the vessels, perhaps four-fifths, which go laden with coal to Cuba, take on their return cargo, elsewhere on the island than at the port of discharge. A few use the same port for both purposes. But the proof is also that the contract in all such cases is .expressed according to the intent. Xhere is no proof that where the policy is upon a voyage to one port and back, the; vessel may proceed >to another port before her'return, and that by usage or otherwise, the latter voyage as well as the former shall be deemed to be within the policy.
 

 Viewing thé case in this aspect, we find nothing that would warrant the interposition of a court of equity.
 

 We are asked, if we decline to reform the contract, to decree the return of the premium; . This we cannot do.
 
 *494
 
 "We regard the ease as one of mere deviation. It is essentially of [hat character. In .that class of cases, the law annuls the contract as to the future, and forfeits the premium to the underwriter. Here equity must follow the law. ■ ■We cannot apply a different rule.
 

 Decree affirmed..-.
 

 *
 

 Kerr on Fraud and Mistake, 419, 420.
 

 †
 

 Beaumont
 
 v.
 
 Bramley, 1 Turner & Russell, 41-50; Marquis of Breadalbane
 
 v.
 
 Marquis of Chandos, 2 Mylne
 
 &
 
 Craig, 711; Fowler
 
 v.
 
 Fowler, 4 De
 
 *491
 
 Gex & Jones, 255; Sells v. Sells, 1 Drewry & Smales, 42; Loyd
 
 v.
 
 Cocker, 19 Beavan, 144.
 

 *
 

 Booke
 
 v.
 
 Lord Kensington, 2 Kay & Johnson, 753; Eaton
 
 v.
 
 Bennett; 34 Beavan, 196.
 

 †
 

 Mortimer
 
 v.
 
 Shortall, 2 Drury & Warren, 372; Sells
 
 v.
 
 Sells,
 
 supra.
 

 ‡
 

 Bentley
 
 v.
 
 McKay, 31 L. J. Chancery, 709; Baldwin et al.
 
 v.
 
 Mildeberger, 2 Hall, 176; Coles v. Bowne, 10 Paise, 534; Calverley
 
 v.
 
 Williams, 1 Vesey, Jr., 211.
 

 §
 

 Harris v. Col. Co. Ins. Co., 18 Ohio, 116; Fireman’s Insurance Co.
 
 v.
 
 Powell, 13 B. Monroe. 311; National Fire Insurance Co.
 
 v.
 
 Crane, 16 Maryland, 260.
 

 *
 

 Noble
 
 v.
 
 Kennoway, 2 Douglas, 513; see also 1 Dueron Insurance, 266, and the cases there cited.
 

 †
 

 Blackett
 
 v.
 
 Royal Exchange Assurance Co., 2 Crompton & Jervis, 250; Crofts
 
 v.
 
 Marshall, 7 Carrington & Payne, 607; Phillipps
 
 v.
 
 Briard, 1 Hurlstone & Norman, 21.
 

 ‡
 

 Wigram on Wills, 11, 12.
 

 §
 

 Yates
 
 v.
 
 Pym, 6 Taunton, 446; Blackett
 
 v.
 
 Royal Exchange Assurance
 
 Co., supra.
 

 *
 

 Holding v. Pigott, 7 Bingham, 465; Clarke
 
 v.
 
 Roystone, 13 Meeson & Welsby, 752; Trueman
 
 v.
 
 Loder, 11 A dolphus & Bilis, 589; Muncey
 
 v.
 
 Dennis, 1 Hurlstone
 
 &
 
 Norman, 216.
 

 †
 

 Hutton
 
 v.
 
 Warren,1 Meeson & Welsby, 477; Clarke
 
 v.
 
 Roystone,
 
 supra.
 

 ‡
 

 1 Greenleaf. on Evidence,
 
 §
 
 295a.
 

 §
 

 United States
 
 v.
 
 Babbit, 1 Black. 61.