### DURHAM v. FIRE & MARINE INS. CO.

*(Circuit Court, D. Oregon.  December 31, 1884.)*

1. SUIT TO REFORM A CONTRACT.
     In a suit to reform a written instrument it must be shown that the mistake is mutual; and therefore it must appear from the allegations of the bill what the agreement of the parties was, and wherein the writing fails to embody it.

2. FIRE INSURANCE—POLICY—MISTAKE—REFORMATION.
     A bill brought to reform a policy of insurance stated that the several owners of a certain warehouse applied to the defendant for insurance against fire on their interests in said property, with loss, if any, payable to one of them; and that "thereupon" the defendant issued its policy on the interest of that one alone, instead of all. *Held*, on demurrer to the bill for want of equity, that it did not appear that the defendant ever agreed to insure the interest of but the one of the owners, and therefore it was not shown that the mistake was mutual.

Suit to Reform a Policy of Insurance.

*George H. Williams*, for plaintiff, and the latter *in propria persona*.
*Paul R. Deady*, for defendant.

DEADY, J.  This suit is brought to reform a policy of insurance issued by the defendant on July 31, 1883, whereby it undertook to indemnify Theo. H. Liebe against loss by fire, for the period of one year from the date thereof, of his interest, not exceeding $4,000 in value, in a two-story frame building, then in course of construction and to be occupied as a grain warehouse, and known as the "Dayton Mills Warehouse," in Dayton, Oregon, for the premium of $100 in hand paid.  The bill alleges that on the day the policy issued, and prior thereto, William Burnell, Theo. H. Liebe, E. S. Larsen, Elizabeth Crane, and A. A. Crane were the owners of a certain parcel of real property, on which was situated a grist-mill and the warehouse in question; that on said day said Burnell, "on behalf of himself and co-owners, composing said Dayton Flouring Mills Company," applied to the agent of the defendant at Portland for insurance "on a warehouse, then in process of construction by said company on their said lands," with loss, if any, payable to said Liebe; that thereupon, "in consideration of the payment by the said insured" of the premium, the defendant, by its agent, issued the policy in question, and "thereby undertook to insure the said Dayton Flouring Mills Company against loss or damage by fire, to the amount of $4,000, upon the said warehouse;" that, "by some oversight, misapprehension, or mistake" on the part of the agent of the defendant, said policy was issued in the name of

said Liebe, who, in fact, only owned one-fourth interest therein, instead of that of the Dayton Flouring Mills Company; and that the agent of the defendant "well knew the parties who composed the said Dayton Flouring Mills Company, and well knew the said company and parties, instead of Liebe, owned said property."

It also appears from the bill that on November 27, 1883, the persons composing the said company conveyed said property to the plaintiff, and on December 3, 1883, with the consent of the defendant, "sold, assigned, and conveyed" to the plaintiff "their interest in the said land and warehouse, and the said policy of insurance;" and that on January 17, 1884, said warehouse was totally destroyed by fire. The insurance company declined to pay any more on the policy than the value of Liebe's interest in the property, claiming that by its terms they only agreed to indemnify the assured for the loss or injury to such interest therein, to-wit, one-fourth of the same.

The defendant demurs to the bill for want of equity, because (1) it does not appear that the alleged mistake was mutual; and (2) either the plaintiff took the assignment without knowledge of the alleged mistake, and therefore has all he bargained for or expected,—a policy on Liebe's interest in the property, whatever that may be,—and there is no mistake as to the plaintiff, or he took the same with knowledge of the mistake, and is guilty of laches in not sooner making it known and seeking a correction thereof. Delay in bringing a suit or making a claim to have a written instrument reformed, on the ground that it does not embody the contract of the parties, is not a technical bar to such suit, but is only a circumstance tending to show, with more or less force, according to the nature of the transaction and the situation of the parties, that the plaintiff took the policy with knowledge of its contents, and ought to be bound by them. But when it clearly appears from the bill that the plaintiff has been guilty of laches, a demurrer thereto for that cause will be sustained.

This suit was brought on September 1, 1884,—more than nine months after the policy was assigned to the plaintiff, and more than seven months after the loss occurred. And no claim appears to have been made before this by either the assignee or his assignors that the instrument did not contain the contract of the parties. No excuse is offered for this delay, and, when this fact is considered in the light of the presumption that the plaintiff's assignors took the policy with knowledge of its contents, probably it does appear that the parties have been guilty of laches in making and asserting the claim that the policy is erroneous. But the fact may be otherwise, and I think it best to overrule the demurrer on this point, and reserve the question of laches until the final hearing. On the first alternative of the latter proposition there has been no argument. It is not denied that the assignment of the policy—the subject-matter—to the plaintiff carried with it the right to maintain any suit necessary or proper to establish or enforce the apparent obligation of the defendant. And

I am not prepared to say that such assignment did not also carry with it the right to maintain a suit to reform the contract, even if the assignee was then unaware of the alleged mistake, and took the assignment without any special reference thereto. This matter is also reserved until the final hearing. But on the first point the demurrer must be sustained.

A party seeking to have an instrument reformed must show—as well by his pleading as in proof—in what the mistake consists, and that it is mutual. In other words, it must appear that the contract, as reduced to writing, does not contain what both parties intended it should. And to this end it must be shown in what they did agree. A mistake in a contract, resulting from the misunderstanding of the parties, is not a ground for reforming it, although it may be for rescinding it. When each party is laboring under a misapprehension as to the purpose or intent of the other, their minds do not meet, and there is no contract to reform. *Hearne* v. *Marine Ins. Co.* 20 Wall. 490; *Brugger* v. *State Invest. Co.* 5 Sawy. 310; Wood, Ins. 505. The bill in this case does not allege that there was any express agreement between the parties on the subject of insuring this property. It is only stated that Burnell, for himself and co-owners, applied for insurance on the warehouse, with loss payable to Liebe. It is not even explicitly stated whose interest in the property Burnell applied for insurance on, or that he then disclosed the names of any of the owners except that of Liebe. But there is no sort of showing that the defendant accepted Burnell's application or agreed to insure the interest of any one in the warehouse. The allegation goes no further than this: that "thereupon" the defendant issued a policy on the interest of Liebe in the property. But as what the defendant did is the only circumstance tending to show that it agreed to do anything, there is nothing to show that it agreed to do more than it did do—issue a policy on Liebe's interest in the property.

It is true that the bill alleges that the defendant, in issuing the policy, "thereby undertook to insure the Dayton Flouring Mills Company against loss or damage by fire to the amount of $4,000 upon said warehouse," but that by some "misapprehension" of the defendant said policy was issued in the name of Liebe instead of said company. But a reference to the policy, which is made a part of the bill, shows that all the defendant undertook "thereby" to do was to insure Liebe's interest in the property. What other interest, if any, the defendant may have agreed to insure by this policy does not appear. The plaintiff seeks to have the policy reformed so as to cover the interest of each of the joint owners of the property, and to entitle himself to this relief he must show, by clear and explicit statement in his bill, that there was an agreement between the parties to that effect. And in this connection it may be well to suggest that upon this matter the language of the bill is uncertain and inartificial.

Insurance is a contract with the owner of property, or some inter-

est therein, to indemnify him against loss or damage by fire. Colloquially speaking, it is effected in his "name;" but in contemplation of law it is effected on his interest in the property, and cannot, therefore, be effected in the "name" of any one else. It may be done for the benefit of such owner, or any third person whom he may designate. The "Dayton Flouring Mills Company" is not the "name" of any person, either natural or artificial. It can have no interest in this property, and an insurance in that "name" is an insurance in the name of no one. A conveyance to the "Dayton Flouring Mills Company" would be void for want of a grantee. 1 Washb. Real. Prop. 422; 2 Washb. Real. Prop. 565, 568; *Friedman* v. *Goodwin,* 1 McAll. 149. The phrase is a mere arbitrary collocation of words constituting a style, or firm name, or sign under which natural persons, associated together as partners, may do business. But waiving this matter, and assuming that an application was duly made by or on behalf of the individual owners of the warehouse to insure their interests therein, it does not appear from the bill that the defendant ever agreed to insure such interests and issue a policy accordingly, but only that the defendant thereupon issued a policy covering the interest of Liebe alone. That this was the result of a mistake or misapprehension on the part of the defendant may be true; but for aught that appears, and so far as does appear, such mistake or misapprehension may have arisen from the fact that the defendants did not wholly accept, or correctly apprehend, the application of Burnell, rather than that it erred in reducing the contract to writing. And, if so, there was no mutual mistake in the matter. The minds of the parties never met on the proposition contained in the application. They made no contract other than the one which is implied in the issuing by the one and the acceptance by the other of the policy on the interest of Liebe alone. The demurrer is sustained.