### GRISWOLD *v.* HAZARD and others.

*(Circuit Court, D. Rhode Island.* January 14, 1886.)

EQUITY—REFORMATION OF BOND—FRAUD—MISTAKE.
    In order to justify the reformation of a bond on the ground of fraud or mutual mistake such fraud or mistake must be most clearly proved. Reformation of bond refused.

In Equity.

Heard by COLT and CARPENTER, JJ.

*Samuel R. Honey* and *Arnold Green*, for complainant.

*Edwin Metcalf* and *Elias Merwin*, for respondents.

CARPENTER, J. This is a bill to cancel or in the alternative to reform a bond given by Thomas C. Durant, as principal, and John N.

A. Griswold and S. Dexter Bradford, as sureties, to the respondents. It appears that at the September term, 1868, of the supreme court of Rhode Island, for the county of Newport, Isaac P. Hazard brought his bill of complaint against Durant and others and the Credit Mobilier of America, in which he alleged that Durant was largely indebted to the Credit Mobilier, and that the corporation had refused to demand and collect the sums due from him, and prayed that Durant be decreed to account with the Credit Mobilier, and to pay over the sums due to that corporation. Rowland G. Hazard was a respondent in that bill, and he and the other respondents in this bill appear to have been interested therein by reason of the fact that they were stockholders in the Credit Mobilier. On motion, a writ of *ne exeat* was issued on that bill, by virtue of which Durant was arrested on the evening of Saturday, the twenty-second day of August, 1868. A discussion then ensued as to the form of bond which might be given as the condition of the release of Durant from arrest, in consequence of which discussion Durant was released on his oral promise to appear at an early hour on Monday morning, the twenty-fourth of August, and execute the required bond. On the day appointed he appeared with his sureties, and executed the bond which is the subject of this suit, and which is a bond in the sum of $53,735, conditioned "that said Thomas C. Durant shall on his part abide and perform the orders and decrees of the supreme court of the state of Rhode Island in the suit in equity of Isaac P. Hazard and others against said Thomas C. Durant and others, now pending in said court within and for the county of Newport." The evidence shows, without doubt and without contradiction, that this bond was drawn by counsel for Isaac P. Hazard, and was presented to the complainant, and was signed by him as and for the bond which on the Saturday evening before he had agreed to sign. The complainant alleges—*First*, that the bond which was proposed on Saturday, and which he agreed to sign, was a bail-bond, or a bond in the nature of a bail-bond, which would bind him in the penalty only on condition that he failed to produce the body of Durant to answer to such decree as the court should make; and that, when the counsel for Hazard, on Monday morning, presented to him for his signature the bond in question, without explaining to him that it was in effect different from a bail-bond, such presentation amounted to a fraud, from which he should be relieved by the cancellation of the instrument so represented and signed by him. In the *second* place, he alleges that, at the conversation on Saturday, the bond which was then agreed to be signed was agreed and understood by both parties thereto to be a bail-bond, and that the subsequent execution of a bond of a different character was a mutual mistake of fact, from which he should be relieved by reforming the instrument so as to make it conform with the contract actually made between the parties.

We do not think the evidence supports either of these allegations.

At the conversation on Saturday evening, at which the bond was agreed to be given, there were present Mr. Bradley and Mr. Peckham, who were counsel for Isaac P. Hazard; and also Thomas C. Durant; John N. A. Griswold; S. Dexter Bradford; Henry W. Gray, who was a friend of Durant; William D. Lake, the sheriff of the county; and Mr. Van Zandt, who was counsel for Durant. Mr. Bradley and Mr. Peckham both testify in distinct terms that the nature of the bond to be given was fully discussed; that Durant said that he could not give the bond required by the writ, which was a bond not to depart out of the jurisdiction without leave of the court; and also stated that it was impracticable for him to apply to the court to discharge the writ on giving bond as usual in such cases,—giving as the reason for both statements that his business required him to leave Newport on the Monday following; and that they, on behalf of the complainant, then offered to discharge the writ of *ne exeat* by an agreement to be filed in court, provided Durant and his sureties would undertake to execute a bond conditioned that Durant should abide and perform the decrees of the court.

Mr. Peckham testifies:

"The nature of these proposed bonds was freely discussed by Judge Bradley, Mr. Van Zandt, and Mr. Durant, and the fact that they were bonds which would hold the principal and sureties liable to pay money, in case Durant should not perform any decree made by the court, was commented on by Mr. Van Zandt and Mr. Durant. During all this interview Judge Bradley did all the talking for the complainants, and Mr. Van Zandt and Mr. Durant spoke about equally for their side. No one else said anything, that I remember with one exception. The sureties were near enough to hear all that was said, and couldn't help hearing, if they paid any attention; but they took no part in the discussion."

Gray testifies, when first called:

"Mr. Griswold was asked to sign the bond, that Durant might be released; and he agreed to do so. * * * The whole idea that I had was that a bail-bond was to be given to replace him within the jurisdiction of the court when wanted, the same as he was when released from jail on Saturday night."

On being recalled in rebuttal, he explicitly denies that there was such conversation as is detailed by Mr. Peckham.

Durant testifies that—

"Griswold signed a bond for my appearance at court, as I understood. * * * The character of the bond was not discussed, to my recollection, but merely spoken of as a bond for my appearance. * * * I supposed myself that that was the extent of the bond."

Griswold testifies:

"I told them, if they would release Durant, I would meet them at Mr. Peckham's office on Monday morning early, and sign a bond for his appearance when wanted. * * * I went to Mr. Peckham's office and signed what I supposed was a bail-bond for Durant's appearance when wanted. * * * I did not understand, nor did any one explain to me, that the bond I was to sign was anything but a bond for Durant's appearance when wanted."

He also explicitly denies the conversation as detailed by Mr. Peckham.

Mr. Van Zandt testifies that it was agreed "that Durant would personally appear on Monday morning and give a bond, as I understood it, to appear and answer to the writ;" that on Monday "a bond, prepared by Messrs. Peckham and Bradley, was handed to me as counsel for Mr. Durant. * * * I told Mr. Durant that, in my opinion, it was a proper bond to secure his appearance in the suit, and the bond was then executed. * * * I myself told Mr. Durant that, in my opinion, the instrument was, in effect, a bail-bond." He also contradicts the testimony of Mr. Peckham and of Mr. Bradley. This is substantially all the testimony bearing directly on the question as to what was said at the conversation on Saturday night.

We cannot find, on this testimony, that there was either fraud or mutual mistake. Where fraud is charged, it must be most clearly proved, and the same rule, with equal reason as it seems to us, has been held to apply to an allegation of mutual mistake. *Hearne* v. *Marine Insurance Co.*, 20 Wall. 488. In this case the witnesses for the repondents were placed in a position where it was their duty clearly to understand the nature of the security they were to accept, and to see that it was clearly understood by all parties, so that no dispute might arise when the bond came to be executed. They say explicitly that they did so understand, and that they did fully explain the nature of the bond to all who were present; and they detail the substance of the conversation at length, and, in the case of Mr. Peckham, with careful particularity. If their testimony be true, there was no fraud, and there was equally no mistake, unless the complainant made a mistake in relying, as his bill says he did, on his own judgment in signing the bond. We are not prepared to say that their testimony is not true. We think it more likely that the memory of the other witnesses is unreliable.

The bill will therefore be dismissed, with costs.