NIPPON HODO COMPANY, Ltd.
v.
UNITED STATES.
No. 479-54.

United States Court of Claims.
April 2, 1958.

Jones, Chief Judge, and Whitaker, Judge, dissented.

Ben Bruce Blakeney, Tokyo, Japan, for plaintiff.

John R. Franklin, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

MADDEN, Judge.

The plaintiff, a Japanese corporation, made a contract with the United States on June 28, 1950, for the construction of a runway, taxiways and aprons at an air base in Japan. The contract price was some $744,000. Upon the completion of the work, the plaintiff was paid the amount admittedly due it, and executed a release, from which release, however, five specific items of claim were excepted.

One of the five excepted items was a claim for "increased cost required for construction of the base course in a manner different from plans and specifications." It is that claim which is here sued upon.

The five excepted claims were presented to the contracting officer, who denied them. The plaintiff appealed this decision to the Far East Air Forces Board of Contract Appeals. That board denied each of the claims, except Claim V, which was for "compensation for increased

prices resulting from the Korean Hostilities." The board allowed Claim V and directed the parties to negotiate an equitable price adjustment to compensate for the increased prices.

The parties negotiated a price adjustment of $59,035.06. The contracting officer prepared a "Statement of Acceptance" dated September 30, 1953, for the signature of the plaintiff, which the plaintiff's president signed. The statement contained six numbered paragraphs, and paragraph 3 recited that claims 1, 2, 3, 4 and 5 had been appealed by the plaintiff to the board. Paragraph 6 said that the sum of $59,035.06 would be accepted "in full settlement and satisfaction of all the claims referred to" in the statement.

Funds were not available to pay the $59,035.06 until 1955. About May 12, 1955, the plaintiff received the $59,035.-06 and a Japanese agent of the plaintiff executed a "Supplemental Agreement" which recited the prior steps in the dealings of the parties and said:

"The Contractor hereby releases and forever discharges the Government from all liability and from all claims and demands which the Contractor now has, except as follows: * * *"

The excepted claim was not one of the five which had been presented to the Board of Contract Appeals.

The plaintiff had, on December 20, 1954, some months before the receipt of the $59,035.06 and the execution of the last mentioned release, filed its present suit. About a month before the execution of the 1955 release, the Government filed its answer denying the plaintiff's right to recover. About a year after the execution of the 1955 release, the Government filed its "Supplemental Answer and Affirmative Defense." Its affirmative defenses were and are the 1953 "Statement of Acceptance" and the 1955 "Supplemental Agreement" which contained the release quoted above.

The plaintiff filed a reply to the defendant's supplemental answer and af-firmative defense. In its reply it says, in effect, that it was not the intention of the parties, in negotiating and executing the two documents relied on as releases, to release the claim here in suit; that it was their intention only to comply with the direction of the Board of Contract Appeals and negotiate the amount to which the plaintiff was fairly entitled under the board's decision on Claim V.

■■■ The Government has made a motion for judgment on the pleadings. The pleadings, as we have summarized them, raise a vital question of fact, and the case will not be ripe for judgment until that question of fact is resolved. To grant the Government's motion would require a decision on our part that the execution of a release broad enough in terms to include the claim here in question, *ipso facto*, releases the claim even though the parties did not intend to release it. This court, under its jurisdiction over claims founded upon contracts with the United States, has and frequently uses the power of a court of equity to reform contracts so that they conform to the intention of the parties, if the evidence shows that reformation is necessary.

■■ In L. W. Packard & Co. v. United States, 66 Ct.Cl. 184, at page 192, this court said:

"We need not cite authorities to sustain the fact that a receipt or release, however inclusive in terms, is subject to explanation as to the subject matter of the accord and satisfaction."

We think this statement is good law. We see no tendency of the law in the direction of elevating form over substance; or of imposing upon parties a bargain which they never intended to make.

The defendant's motion will be denied.

It is so ordered.

LARAMORE and LITTLETON, Judges, concur.

JONES, Chief Judge (dissenting).

I can see no reasonable basis for sending this case to trial. I freely concede that in clear cases of mutual mistake a lease or a contract may be modified to express the clear intentions of the parties, but no such situation exists here and no valid issue is raised.

When the work was originally paid for, all five of the excepted items were specifically listed. These five items included the item in suit. When the five excepted items were presented to the contracting officer he rejected all of them. Appeal was made to the Board of Contract Appeals, which rejected all of the items except item V. Among those rejected claims was the item in suit. The parties were directed to negotiate a settlement. It will be noted that the Board ordered no specific amount to be paid. The negotiations might have resulted in an agreement of any amount not to exceed the amount of plaintiff's claim which until agreement was reached was a wholly unliquidated claim.

The parties began negotiations looking toward compliance with the Board's order. Several conferences were held. The plaintiff's attorney sat in on these conferences and agreement was reached which was reduced to writing. It was agreed that plaintiff would be paid $59,-000 in settlement of all five excepted claims which included the claim in suit. The particular claim now sued upon was specifically named and identified as one of the items released.

Appropriations not being available, the claim was not actually paid until more than a year later, at which time a new release was signed also listing the claim in suit as one of the items released.

Plaintiff attempts to raise an issue by a unilateral statement, wholly negative in character as to an item definitely listed as released, merely on the naked allegation that it was not discussed in the negotiations leading to a written agreement. No fraud, overreaching or concealment is claimed. Nor is there an allegation that the defendant was in possession of facts that were not disclosed. Since the Statute of Frauds was enacted in 1677 in England and since the establishment of courts in the United States, written instruments have been held to express the intention of the parties if clearly stated.

The plaintiff does not allege that any misleading statements were made. It undertakes to raise an issue by an *ex parte* statement that both parties had not intended to include in the release the item in suit. This allegation in so far as defendant is concerned is a pure conclusion of law. The intention is expressed in the written document, twice stated.

If both parties were agreed that the parties had not intended to include the item in question a different situation would be presented, but the defendant does not agree that such was the intention but insists that the intention is embodied in the written document. It is incredible that a unilateral statement, wholly negative in character, should be held to raise an issue and thus get over the disputed barricade.

It is well settled that if the supposed misunderstanding as to what was to be released was solely a misunderstanding by the plaintiff (the contract having been executed), no relief is possible and plaintiff is bound by the clear terms of the release. Hyde Park Clothes, Inc. v. United States, 1949, 84 F.Supp. 589, 114 Ct.Cl. 424; Hearne v. Marine Ins. Co., 1874, 20 Wall. 488, 87 U.S. 488, 22 L.Ed. 395; Williston on Contracts, Rev.Ed., Vol. 5, § 1580, pp. 4414–4415.

No doubt in certain cases of mutual mistake, whether in releases or in contracts, the document may be reformed to meet the intention of the parties. But the facts must clearly evidence a mutual mistake. See Restatement of Contracts, § 511; Williston on Contracts, Rev.Ed., Vol. 5, § 1597, p. 4450, and cases cited therein. No such situation exists here.

The majority cites the case of L. W. Packard v. United States, 1928, 66 Ct.Cl. 184. However, in that case plaintiff, before signing, had talked with the Quartermaster General's office at Boston with which the claim in question was pending

and was assured by that office that a signing of a general cancellation agreement would not affect that claim. The Boston office was the office with which the contract was made. The assurance was again given at the time of the actual signing of a general cancellation agreement. This agreement did not list the claim, but was general in nature and the defendant conceded "the justness of the [plaintiff's] claim", and freely admitted a mutual mistake.

The releases in the case at bar were not broad, general or all-inclusive. They were specifically limited to the release of claims previously mentioned in the agreements and, in the second instrument, there was contained a carefully enumerated claim that was excepted from the operation of the release. The excepted claim had no bearing on this suit. It seems strange that the parties would specifically except a claim that was not connected with this contract and would not notice that they had listed the item in suit as released.

These releases need no explanation, nor does plaintiff seek to explain them, but rather to destroy them. To claim a mutual mistake on an *ex parte* assertion in the very teeth of the twice written record and contrary to a wilderness of circumstances is an effort to bend a just doctrine to the breaking point. To undertake to stretch the doctrine of mutual mistake to cover a case of this kind: to read out the crystal clear language and to read in the opposite conclusion, would be completely without justification. It will be a sheer waste of time and a useless expense to the litigants and the court to send this case to trial when there is no reasonable chance of establishing a mutual mistake with sufficient clarity to justify a court in setting aside an instrument in such circumstances as are admitted to be present here.

I can find no justification for going behind the plain recital in connection with the statement of the first settlement agreement and the supplemental settlement agreement.

WHITAKER, Judge, joins in the foregoing dissenting opinion.