**Charles Merrill MOUNT, Plaintiff-Appellant,**

v.

**BOOK–OF–THE–MONTH CLUB, INC., Defendant-Appellee.**

**No. 639, Docket 76–7458.**

United States Court of Appeals, Second Circuit.

Argued March 14, 1977.

Decided May 19, 1977.

---

1

Charles Merrill Mount, Neponsit, N.Y., pro se.

Paul J. Newlon, New York City (Richard M. Zuckerman, and Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on the brief), for defendant-appellee.

Before FEINBERG and TIMBERS, Circuit Judges, and DAVIS, Judge.*

DAVIS, Judge:

Plaintiff-appellant, Charles Merrill Mount, author of "John Singer Sargent: A Biography," filed this suit on December 29, 1975, in the Southern District of New York against defendant-appellee Book-of-the-Month Club, alleging two separate counts of copyright infringement of his Sargent work. Defendant successfully moved for summary judgment on both counts. We agree with the District Court as to the first count and part of the second, but find it necessary to remand for a trial on one portion of the latter claim.

The first count goes back to events in 1955–1956. In November 1955 plaintiff's work on Sargent was published. His complaint asserts that, earlier in that year, his publisher sent proof copies of the book to defendant-appellee (to decide whether it wished to adopt the volume for its book club); defendant turned the proofs over to

* Of the United States Court of Claims, sitting by designation.

one of the readers "employed" by it, Mrs. Pamela Taylor; she sent the proofs to her friend David McKibbin in Boston; and McKibbin infringed plaintiff's copyright by means of a pamphlet on Sargent published in January 1956 by the Boston Museum of Fine Arts. Defendant responded with affidavits to the effect that Mrs. Taylor was not its employee but an independent contractor, and that Book-of-the-Month bore no responsibility for any tort she may have committed in sending the proofs to McKibbin. Defendant also pointed out that it had rejected plaintiff's book for reproduction and had nothing to do with it.

■ The District Court accepted this position of Book-of-the-Month Club, holding that "there is no basis for imposing vicarious liability on this defendant, if, as alleged, Mrs. Taylor made the proofs available to an independent infringer, McKibbin." The court also ruled that the claim was barred by the three-year statute of limitations in the then copyright law (17 U.S.C. § 115(b)).

We need not consider whether defendant could escape liability simply because the reader to whom it sent the proofs of plaintiff's work was an independent contractor. In any case the claim is foreclosed by limitations. Even if defendant participated in an infringement through the sending on of the proofs to McKibbin, that event occurred in the Fall of 1955, almost twenty years before this action was begun. There is no proof or allegation of any further connection of Book-of-the-Month with McKibbin's pamphlet. Unless the statute's running has been tolled or prolonged, the claim is undoubtedly long since time-barred.

Mount first says that tolling occurred because he did not discover until 1974 that McKibbin had had access to his manuscript through Mrs. Taylor. But plaintiff knew in or about January 1956 of the publication of McKibbin's pamphlet; he could tell if he had a potential infringement claim by comparing the two works and noting the similarities; if he thought actual access by McKibbin before January 1956 had to be proved, he could have found out through discovery whether and how McKibbin had

seen the Mount book. That type of knowledge, available to plaintiff in 1956, was enough to start limitations running at that time, unless defendant successfully concealed the cause of action by fraudulent means. *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340–41 (5th Cir. 1971). There is no hint of such conduct by Book-of-the-Month which (except possibly for Mrs. Taylor's 1955 action) had nothing whatever to do with the McKibbin's work and remained wholly oblivious of any possible encroachment by it on "John Singer Sargent: A Biography."

Second, plaintiff says that the Boston Museum has sold the McKibbin pamphlet within the three-year period free of limitations, and that this recent infringement suffices to bring the case against Book-of-the-Month within the statutory span. The difficulty with this contention is that appellee's own infringement, if it occurred, ended completely in 1955–1956 and appellee cannot be held for what the Boston Museum has since done on its own responsibility. The principle is that of *Maloney v. Stone*, 171 F.Supp. 29 (D.Mass.1959), in which Judge Wyzanski rejected an attempt to hold in damages a manufacturer of an allegedly infringing work more than the normal limitations period after it had turned over all copies of the infringing work to its customers who continued to market them. The court held that, more than the limitations period (two years in that case) prior to the bringing of the suit, the manufacturer "ceased to infringe, if it ever did infringe, ceased to invade plaintiff's interest, if it ever had invaded plaintiff's interest, and discontinued all relations as agent of, associate of, or even as contractual party" with the customers. What the latter did with the manufacturer's products, "they did on their own account and entirely on their own responsibility." 171 F.Supp. at 32. The same is true here.

The second part of the complaint brings us forward to the 1970's. Harper & Row Publishers, Inc., issued in this country a book by Richard Ormond, a Britisher, called "John Singer Sargent: Paintings, Draw-

ings, Watercolors." Harper granted and assigned to Book-of-the-Month the exclusive book club rights to that work for three years beginning April 23, 1970. Defendant-appellee manufactured the book for sale to its subscribers, using the original Harper plates; the volumes made by appellee are indistinguishable from those made by Harper's and do not show Book-of-the-Month as publisher or distributor. In its contract with defendant, Harper warranted that the Ormond book did not violate any copyright or other rights of ownership, and agreed to indemnify defendant against all such claims.

Plaintiff asserts in this action that the Ormond book infringes his copyright in his Sargent book and other Sargent materials, and that Book-of-the-Month is liable for such infringement via the books it sold. Earlier, Mount had sued Harper's in the Southern District for the same type of infringement. *Mount v. Harper & Row Publishers, Inc.*, 73 Civ. 3794 (LFG) (S.D.N.Y.). Judge Gagliardi had denied both parties' motions for summary judgment and directed a trial on the issue of infringement. At that point the *Harper* action was settled (after discussions in which Judge Gagliardi participated) for a payment of $12,500 to plaintiff (half by Harper's and half by Phaidon Press, the British publisher of the Ormond book).

As part of the settlement a release was given by Mount in which he released Harper's and its "assigns" from all claims "which have arisen or may yet arise out of past or future publishing, printing, distributing, selling or licensing by" Harper's or its successors or assigns of any portion of the Ormond book, except that nothing in the release was to bar plaintiff "from bringing or maintaining any manner of action, cause of action or suit whatsoever against Richard Ormond." This release has been submitted by Book-of-the-Month as a complete bar to the present action, in view of the book club's assignee-assignor relationship to Harper's with respect to the Ormond work. In addition, appellee says

that most (though not all) of this second claim is barred by the three-year statute of limitations. The District Court accepted both of these defenses.

On this second count we also uphold the ruling on limitations. The materials presented by appellee show conclusively that (a) all the manufacture, promotion, and regular sales of the Ormond work by Book-of-the-Month occurred more than three years before the complaint was filed on December 29, 1975, and (b) the only sale within that three-year period was a remainder sale of 116 unsold copies, at $4.75 per volume, to Marboro Bookshops Corporation, on February 16, 1973, for a total gross of $551. *Rosette v. Rainbo Record Mfg. Corp.*, 354 F.Supp. 1183, 1194 (S.D.N.Y.1973, Gurfein, *J.*), *affirmed per curiam*, 546 F.2d 461 (2d Cir. 1976), held under the old copyright act (*i. e.* the one in effect when plaintiff brought this suit) that "Any infringement more than three years before the commencement of the action . . . is barred by limitations . . .." We agree that that is the rule, and it necessarily bars recovery (assuming plaintiff prevails on all other points) for anything but the late $551 sale to Marboro.[1]

The other defense of release gives us somewhat more trouble. On its face the release Mount signed and delivered to Harper's is certainly broad enough, as Judge Brieant held below, to cover any claim against Book-of-the-Month which was an assignee and indemnitee of Harper's. The problem is that Mount has, in our view, raised a triable issue as to whether he was assured in the *Harper's* litigation by Judge Gagliardi and opposing counsel that, despite its wording, the release would not prevent him from suing Book-of-the-Month. After the settlement discussions but before the release was drawn up, Judge Gagliardi said to plaintiff: "Mr. Mount, we have been here discussing a disposition of your matter this morning and it has been indicated to me that you are willing to accept the sum of $12,500 in full settlement of your claim

---

1. We have no occasion to consider the proper limitations rule under the new Copyright Act.

against the defendant Harper & Row has indicated that they are willing to settle this case with you for the sum of $12,500" (emphasis added). Shortly thereafter, Harper's counsel remarked that "this $12,500 is, in effect, a purchase of Mr. Mount's approval with respect to those two corporate defendants" (Harper's and Phaidon). Mount then said: "That is a very wide question. Could this be off the record for a moment?" On counsel's agreement, there was a discussion off the record which was not transcribed. At the oral argument of the appeal in this court, Mount flatly represented to the court that during that off-the-record discussion in the District Court he was specifically assured that he would be free to sue Book-of-the-Month. Shortly thereafter, Judge Gagliardi said on the record, with plaintiff's concurrence, that it was the common understanding "that the defendant [Harper's] will prepare the appropriate release *in the form which we have indicated*" (emphasis added).

Moreover, plaintiff's opposing affidavits on the summary judgment motion contain two statements relevant to his present contention. He says at one point: "It was well known to all parties that at all times plaintiff intended to bring separate proceedings against Book-of-the-Month Club following successful conclusion of his action against Harper." The other statement refers to the time he went to the office of Harper's attorneys to receive the check and sign the release. His affidavit declares that discussion ensued "concerning the propriety of the releases thrust before plaintiff, and especially because they did not conform to the Minutes. Plaintiff asked that the words of the Minutes, 'reserving his right to proceed against Mr. Ormond *or anyone else*' should be added to the release. [An attorney employed by Harper's counsel], present for the purpose of notarizing the signatures, assured plaintiff that he was signing away nothing not specified in the Minutes. On

this basis plaintiff signed" (emphasis in original).

It is of some significance, in connection with these statements of Mount's, that, on the very day he received the Harper's check and signed the release, he wrote to Book-of-the-Month demanding a meeting to discuss compensation for the alleged infringement; when no answer was received he began this suit a bit over two weeks later.

■ Taken all together, these sworn statements, representations to this court, and undisputed record facts raise a triable issue, under the standards controlling the award of summary judgment, of whether Mount was assured up to the time he signed the release that, despite the broad terms of the instrument, he would still be able to sue appellee. Of course, appellant could and should have furnished an affidavit in the District Court giving his version of what occurred during the off-the-record discussion before Judge Gagliardi. But plaintiff, though obviously intelligent and articulate, is still a layman representing himself and as such is entitled to a certain liberality with respect to procedural requirements. *Stirling v. Chemical Bank,* 511 F.2d 1030, 1031–32 (2d Cir. 1975). Also, it seems noteworthy that appellee submitted no affidavit countering Mount's sworn version of the assurances given him by one of Harper's counsel at the very moment he signed the release.

■ The District Court below thought the bare terms of the release conclusive primarily because appellant deliberately signed it although he knew that in words it was wider than the form of release outlined by Judge Gagliardi.[2] But Mount's plea is that he, a layman, was expressly informed by one of Harper's lawyers, just before he signed the release, that he could still sue Book-of-the-Month, and that the release as written conformed in essence to the assurances previously given him in court. This position has enough support at this stage to

---

2. Judge Brieant also thought it important that plaintiff signed this consent to the order of discontinuance five days after signing the release and receiving Harper's check. It appears from the record that the consent was actually

signed prior to the release at the time of the hearing before Judge Gagliardi but was not filed by plaintiff until after the settlement was fully effectuated.

avoid summary judgment and to call for a trial. If plaintiff turns out to be correct on the facts, the instrument can be construed as inapplicable to a claim against appellee, either because that was the expressed intention of both parties (Harper's and Mount) or because overreaching by Harper's would call for equitable reformation of the terms of the written document. *See Nippon Hodo Co. v. United States,* 142 Ct.Cl. 1, 4, 6, 160 F.Supp. 501, 502, 503–04 (1958); *Watts Constr. Co. v. United States,* 161 Ct.Cl. 801, 806–07 (1963).[3] There would be no contravention of the parol evidence rule since plaintiff's presentation, if accepted, would show either that the release was not fully integrated or that the written words meant more than appeared on the surface or that there are adequate grounds for reformation. *See* Restatement (Second) of Contracts § 240 (Tent. Draft No. 6, 1971); *Murray v. Lichtman,* 119 U.S.App. D.C. 250, 339 F.2d 749, 751 (1964); *see also United States v. Lennox Metal Mfg. Co.,* 225 F.2d 302, 310 ff. (2d Cir. 1955) (separate opinion of Frank, J.).

On the whole case we conclude that the judgment of the District Court against appellant must be affirmed as to the first count and as to all of the second count except the $551 sale to Marboro. On that minor aspect of the case we reverse the granting of summary judgment and remand for a trial, if appellant wishes to continue the litigation, on the initial issue of the application of the release to a suit against defendant-appellee and then if necessary on infringement and damages.

Affirmed in part and remanded in part.

---

3. It is unnecessary that appellant be remitted to the round-about method of seeking release in the *Harper's* litigation itself. If, as appellee Book-of-the-Month insists, it stands with respect to the release wholly in Harper's shoes as assignee and indemnitee, Book-of-the-Month is an appropriate party to defend against reformation in the present action.