*Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932).

Defendant argued that even if the court holds that the assessments are void, plaintiff should be prohibited from collecting a refund on equitable principles of estoppel, waiver, or laches. However, since the assessments were not void, and plaintiff failed to show an overpayment, the court need not address the equitable defenses.

## CONCLUSION

The court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment for the reasons stated above. The Clerk of the Court is directed to enter judgment in favor of defendant. Costs.

**IT IS SO ORDERED.**

---

**KENBRIDGE CONSTRUCTION COMPANY, a Virginia Corporation, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1581C.**

United States Court of Federal Claims.

Aug. 5, 1993.

---

5. Plaintiff's claim that judicial collection is seldomly used by the IRS is without legal significance. The fact that a right is seldomly used does not forbid its use in the future. The Internal Revenue Code specifically provides for collection by legal proceeding. *See* 26 U.S.C. § 6501(a) (1988).

Charles E. Ayers, Jr., Richmond, VA, Atty. of Record, for plaintiff; Ayers, Crowgey & Stolte, P.C., of counsel.

Mark D. Rubino, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant; David M. Cohen, Director, Martha H. DeGraff, Asst. Director, and John McCormack Treanor, Army Corps of Engineers, of counsel.

## OPINION AND ORDER

FUTEY, Judge.

This contract case is before the court on defendant's motion for summary judgment. Defendant argues that plaintiff waived its right to file its complaint when, upon receiving final payment under the contract, it executed a release of claims. Plaintiff counters that the release should not bar plaintiff's instant claim because the parties intended to reserve this claim, even though the release does not so state.

### Factual Background

On April 19, 1988, plaintiff and the government entered into contract No. DACA65–88–C–0042 for construction of a Troop Support Agency Headquarters Building at Fort Lee, Virginia. On May 18, 1988, plaintiff entered into a subcontract with Dwight Snead Landscaping & Paving Co. (Snead) to furnish labor, materials, and equipment necessary for much of the work.

The subcontract was subject to all of the terms and conditions of the prime contract between plaintiff and the government.

The sections of the contract relevant to the complaint deal primarily with storage of surplus materials generated during excavation and grading at the construction site. The contract required Snead to stockpile certain surplus and unsatisfactory material in on-site berms, and to dispose of other specified material off-site.

By letter dated June 20, 1988, plaintiff, on Snead's behalf, notified the area engineer that it was concerned with the fact that there was a purported excess of 18,000 to 20,000 cubic yards of material on the building site, and Snead was not certain where to store this material. Plaintiff and Snead believed that the excess material needed to be transported and unloaded off-site. In a written response dated August 3, 1988, the area engineer informed plaintiff that it was to put the material in the on-site berms as specified by the contract. The area engineer also stated that Army personnel would remove any material in excess of that required for the berms.

Snead continued working on the site for approximately 2 years. On January 23, 1990, Snead notified plaintiff that it was unable to store approximately 22,900 cubic yards of material into the areas provided by the contract for such storage. On April 10, 1990, on Snead's behalf, plaintiff requested that the government increase the contract amount by $196,485.71, for stockpiling the extra material. On April 16, 1991, the government denied plaintiff's request for additional compensation because, in its opinion, the location of the stockpiled material was neither off-site, nor an inconvenience to the contractor.

On May 2, 1991, plaintiff submitted a certified claim to the contracting officer, which the contracting officer denied on August 15, 1991. On or about October 1, 1991,[1] plaintiff executed the Payment Esti-

mate. The Payment Estimate included a release, which stated that—

> Unless otherwise indicated in the space provided at the end of this Release, the Contractor by executing Block 12 of this Payment Estimate hereby releases the United States and its officers and agents from all claims and demands arising under or by virtue of this contract.

Plaintiff executed Block 12 of the Payment Estimate without reserving its right to bring additional claims.

On November 12, 1991, plaintiff filed a complaint with this court. As in its claim before the contracting officer, plaintiff here alleges that it is entitled to an equitable adjustment of $196,485.71 for the transfer of surplus materials to an off-site location. On September 24, 1992, defendant filed a motion for summary judgment, arguing that plaintiff's release precludes it from bringing the instant claim. The parties have filed all appropriate responses to this motion. Oral argument was held on July 7, 1993.

## Discussion

### I. *Summary Judgment*

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Jay v. Secretary, DHHS*, 998 F.2d 979, 982 (Fed.Cir.1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The party moving for summary judgment bears the initial burden of demonstrating either the absence of any genuine issue of material fact or the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d

---

**1.** A discrepancy appears to exist regarding the exact date on which plaintiff executed the Payment Estimate. The Payment Estimate indicates that it was "presented for payment" by plaintiff's president, James J. Roberts, on "10/1/91." In his affidavit, however, Mr. Roberts avers that the Payment Estimate "was executed, in fact, by me ... on October 22, 1991."

265 (1986); *Jay*, 998 F.2d at 982. If the moving party demonstrates an absence of genuine issues of material fact, then the burden shifts to the non-moving party to show that a genuine factual dispute does exist. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir. 1987). Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553.

The court must resolve any doubts about factual issues in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir. 1985), to whom the benefit of all presumptions and inferences run. *Jay*, 998 F.2d at 982; *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

## II. *Release as Claim Waiver*

■ In the instant case, plaintiff executed a release without reserving its right to bring additional claims. The release is a contractual provision, and its interpretation is a matter of law. *P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed.Cir.1984). The plain and unambiguous language of this release indicates that, unless plaintiff reserves its right to bring additional claims, it discharges the government from all claims arising under the contract. *See George Hyman Constr. Co. v. United States*, 832 F.2d 574, 579 (Fed.Cir.1987).

■ As a general rule, "a contractor who executes a general release is thereafter barred from maintaining a suit for damages or for additional compensation under the contract based upon events that occurred prior to the execution of the release." *B.D. Click Co. v. United States*, 614 F.2d 748, 222 Ct.Cl. 290, 305 (1980). *See also H.L.C. & Assocs. Constr. Co. v. United States*, 367 F.2d 586, 176 Ct.Cl. 285,

295 (1966); *J.G. Watts Constr. Co. v. United States*, 161 Ct.Cl. 801, 805, 1963 WL 8559 (1963). A contractor's execution of a release that is complete on its face "reflects the contractor's unqualified acceptance and agreement with its terms and is binding on both parties." *Clark Mechanical Contractors, Inc. v. United States*, 5 Cl.Ct. 84, 86 (1984) (*citing Inland Empire Builders, Inc. v. United States*, 424 F.2d 1370, 191 Ct.Cl. 742, 752 (1970)). Where a contractor fails to exercise its right to reserve claims from the operation of a release, "it is neither improper nor unfair, absent some vitiating or aggravated circumstance, to preclude the contractor from maintaining a suit based on events which occurred prior to the execution of the release." *Id.* (*citing H.L.C.*, 367 F.2d 586, 176 Ct.Cl. at 293). [Footnote omitted.]

There are, however, special and limited circumstances under which a claim can be prosecuted despite the execution of a release. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1395 (Fed.Cir. 1987). These situations include mutual mistake, conduct of the parties acknowledging claims after a release, obvious mistake or oversight, and fraud or duress. *J.G. Watts*, 161 Ct.Cl. at 806-07.

Plaintiff argues that circumstances warranting exception to the operation of a release exist in the instant case. Plaintiff maintains that, despite the absence of any reservations in the release, there was a "clear understanding" with government officials that plaintiff's execution of the release would not affect plaintiff's equitable adjustment claim. Plaintiff avers that its employees "were led to believe by statements of Government employees" that the claim was exempted specifically from the release. Plaintiff reasons that, in light of the parties' alleged intentions, the parties committed a mutual mistake or an obvious oversight in neglecting to reserve the claim in the release and that plaintiff now should be permitted to litigate its claim. *J.G. Watts*, 161 Ct.Cl. at 806; *Colonial*

*Navigation Co. v. United States,* 181 F.Supp. 237, 149 Ct.Cl. 242, 246–47 (1960).[2]

■ As a threshold issue, defendant maintains that the evidence that plaintiff submits to support its argument is inadmissible under the parol evidence rule. Defendant contends that the language of the release is clear and unequivocal, and should not be altered based on evidence of alleged discussions that occurred prior to or contemporaneous with the release's execution. While "[t]he general rule is that extrinsic evidence will not be received to change the terms of a contract that is clear on its face," *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1183 (Fed.Cir.1988), the court may consider such evidence to determine whether the circumstances warranting exception to a release exist. *Id.* at 1185; *H.L.C.,* 367 F.2d 586, 176 Ct.Cl. at 295; *J.G. Watts,* 161 Ct.Cl. at 807.

■ Plaintiff submits two affidavits to support its argument, one from plaintiff's president, and the other from plaintiff's project manager. Both affiants aver that—

> When the payment estimate was executed, discussions were held with Marshall Washington, Civil Engineer, and other government employees, regarding the pending claim ... for Snead's removal of excess dirt.... There was a clear understanding between Marshall Washington and other government employees and representatives of Kenbridge ... that the pending claim of Snead would be pursued through the Courts.[3]

Defendant rebuts plaintiff's evidence with declarations and affidavits of five Army Corps of Engineers (Corps) employees connected with the contract at issue, including the contracting officer, the area engineer, the assistant area engineer, the project's team leader, and Marshall Washington, the only government official specifically named in plaintiff's affidavits.[4] Each of defendant's affiants avers that he or she had absolutely no understanding with any Kenbridge representatives that plaintiff's equitable adjustment claim would be excepted from the release. Mr. Washington, in particular, avers that—

> [Plaintiff's] allegations are false.... There was no such clear understanding [with Kenbridge representatives that the claim would be pursued in the courts]. Indeed, by the time I had processed the payment estimate at the end of September 1991, I had forgotten about the entire issue.[5]

■ The parties' affidavits squarely conflict on an issue material to the instant case. Specifically, the evidence creates a question as to whether the parties intended to except plaintiff's claim from the general release and committed a mutual mistake in neglecting to do so. If the parties had intended to preserve plaintiff's claim, then the court may honor the parties' intentions by permitting plaintiff to litigate its claim. *See J.G. Watts,* 161 Ct.Cl. at 806; *Nippon Hodo Co. v. United States,* 142 Ct.Cl. 1, 4, 160 F.Supp. 501 (1958); *L.W. Packard & Co. v. United States,* 66 Ct.Cl. 184, 192–93, 1928 WL 2966 (1928). If the government

**2.** While it did not raise the issue in its brief, plaintiff suggested at oral argument that duress also may have been involved in the signing of the release, thereby excepting it from the terms of the release. *J.G. Watts Constr. Co. v. United States,* 161 Ct.Cl. 801, 807, 1963 WL 8559. Plaintiff has failed to make any showing whatever to prove the necessary elements of duress as set forth by the Court of Claims in *Fruhauf Southwest Garment Co. v. United States,* 111 F.Supp. 945, 126 Ct.Cl. 51, 62 (1953). *See B.D. Click Co. v. United States,* 614 F.2d 748, 222 Ct.Cl. 290, 305 (1980); *G.M. Shupe, Inc. v. United States,* 5 Cl.Ct. 662, 675 (1984).

**3.** Plaintiff's Statement of Genuine Issues, Exhibits (Ex.) 1 and 2. Although both affidavits ap-

pear to be based on hearsay, plaintiff's counsel stated at oral argument that Beverley Hawthorne, one of the two affiants, was one of the "representatives of Kenbridge" who had the alleged understanding with Marshall Washington and other government employees. While the court should not accept counsel's oral representation of a fact in lieu of a sworn affidavit, *see J.G. Watts Constr. Co. v. United States,* 161 Ct.Cl. 801, 808, 1963 WL 8559 (1963), the court will accept Ms. Hawthorne's affidavit since she had personal knowledge of the alleged understanding between plaintiff and the government.

**4.** Defendant's Reply, Appendix (App.) at 1–13.

**5.** *Id.* at 5.

did not share plaintiff's intention to maintain the claim, however, and plaintiff's failure to except the claim in its release amounted to a unilateral mistake, then plaintiff may not be able to avoid the binding effect of the release. *See Am. Employers Ins. Co. v. United States,* 812 F.2d 700, 705 (Fed.Cir.1987); *H.L.C.,* 176 Ct.Cl. at 295, 367 F.2d 586; *J.G. Watts,* 161 Ct.Cl. at 810; *G.M. Shupe, Inc. v. United States,* 5 Cl.Ct. 662, 675 (1984).

Defendant argues that the record supports the conclusion that plaintiff committed a unilateral mistake in failing to preserve its claim in the release. Defendant suggests that, when read in context with his entire affidavit, Mr. Washington's statement that he had "forgotten about the entire issue" does not indicate that he made a mistake in failing to preserve plaintiff's claim. Rather, defendant contends, in light of the contracting officer's denial of plaintiff's claim and plaintiff's failure to reserve the claim in its release, Mr. Washington's statement suggests that he had assumed that plaintiff would not be pursuing its claim any further.

■ In ruling on a summary judgment motion, however, "the weighing of the evidence, and the drawing of legitimate inferences from the facts are ... not [tasks] of a judge." *Jay,* 998 F.2d at 982 (*quoting Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513). While defendant's interpretation of the evidence certainly is plausible, plaintiff's argument also is justified in light of its own affidavits, which the court must accept as true for purposes of a summary judgment motion. *Id.* The decision as to which interpretation should prevail "calls for full ventilation of the facts" at trial. *Philadelphia Suburban Corp. v. United States,* 217 Ct.Cl. 705, 707, 1978 WL 8442 (1978).

■ In the alternative, defendant maintains that plaintiff has failed to show that its representatives reached their alleged understanding with an authorized representative of the government. The government cannot be bound by the acts of its agents who do not possess actual authority. *Heckler v. Community Health Serv. of*

*Crawford County, Inc.,* 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984); *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991); *Housing Corp. of America v. United States,* 468 F.2d 922, 199 Ct.Cl. 705, 711 (1972). Parties who deal with the government "assume the risk of accurately ascertaining that officials with whom they deal possess authority to bind the government." *Fed. Crop Ins., Inc. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). *See also El Centro,* 922 F.2d at 820.

According to the affidavit of Kenneth Herndon, Area Engineer for the Corps, the only person with authority to bind the government on matters such as granting a waiver of release of liability was the contracting officer at the Norfolk District, Lt. Colonel Richard Sliwoski. Lt. Colonel Sliwoski, in turn, avers that—

I did not speak with either Mr. Roberts or Ms. Hawthorne or anyone employed by Kenbridge or Snead regarding the topic of the pending claim. . . . If it is the contractor's contention that I am one of [the government officials with whom Kenbridge representatives had an understanding], such allegations are false.

Plaintiffs' affiants do not indicate in their affidavits whether Lt. Colonel Sliwoski was one of the government officials with whom Kenbridge representatives allegedly agreed to preserve plaintiff's claim. Presuming that it is plaintiff's contention that Lt. Colonel Sliwoski did have such an understanding with Kenbridge representatives, *see Jay,* 998 F.2d at 982; *H.F. Allen Orchards,* 749 F.2d at 1574, then the assertions of plaintiff's affiants directly conflict with Lt. Colonel Sliwoski's statement. While Lt. Colonel Sliwoski's denial of plaintiff's allegations is compelling, the court may not make credibility determinations when ruling on summary judgment. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Jay,* 998 F.2d at 982.

Thus, the court finds that plaintiff's affidavits are sufficient to raise issues of fact

as to whether the parties committed a mutual mistake in failing to except plaintiff's claim in the release and, if so, whether plaintiff's representatives reached the understanding to preserve plaintiff's claim with a federal official authorized to waive the release of claims against the government. Because these factual issues are material to the outcome of the instant case, summary judgment is precluded. *See Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2509.

### Conclusion

For the reasons stated above, the court denies defendant's motion for summary judgment.

The parties are directed to file a joint status report by September 7, 1993, indicating further proceedings in this case.

IT IS SO ORDERED.